### EX PARTE M. E. TAYLOR.

PRIVILEGE TAX. *On drummers. Charter of Vicksburg. Construction of power.*
  A provision of the charter of the city of Vicksburg granted to the Board of Mayor and Aldermen the power " to levy and collect for corporation purposes a privilege-tax upon the business, trade, or employment of all auctioneers, grocers, merchants, brokers, bankers, cotton factors, cotton sellers, retailers, taverns, hotels, boarding-house keepers, coffee-house keepers, retail liquor-dealers, confectioners, peddlers, junk dealers, and others of like character, as the board may designate." Under this provision the city authorities enacted an ordinance levying a privilege-tax of $5 per week on commercial travellers, or drummers, as being of "like character" with the followers of some of the callings therein specifically enumerated. *Held*, that it is doubtful whether the city was authorized by the provision of its charter above quoted to levy such tax, and the ordinance levying the same cannot be upheld by a doubtful interpretation of the charter.

APPEAL from the decision of the Hon. U. M. YOUNG, Judge of the Eleventh Judicial District, on *habeas corpus.*

The case is stated in the opinion of the court.

*Buck & Clark*, for the appellant.

1. Has a State, or a municipal corporation under its direction and authority, the right to impose and collect a tax, for

purposes of revenue, upon the business or calling of a drummer or commercial agent, prosecuted within the limits of the one or the other? See *Ex parte Robinson*, 12 Nev. 263; *Machine Co.* v. *Gage*, 10 Otto, 676; *Harrison* v. *City of Vicksburg*, 3 Smed. & M. 581; *Woodruff* v. *Parham*, 8 Wall. 123; 8 Wall. 110, 148; *Nathan* v. *Louisiana*, 8 How. (U. S.) 82; *Gibson* v. *Mason*, 5 Nev. 284; *Raguet* v. *Wade*, 4 Ohio, 107; *Leon* v. *Warren County*, 36 Ind. 267; *McCullough* v. *Maryland*, 4 Wheat. 428; *City of New York* v. *Milne*, 11 Pet. 238; *License Cases*, 5 How. (U. S.) 625.

It is submitted that these authorities establish the right of a State, or municipality, as in this case, to levy a tax for purposes of revenue upon commodities, or professions, or callings, as suggested in the above inquiry, and we insist there is no authority or recognized construction of the Federal Constitution which brings the tax in controversy within the inhibition of the commercial clause of that instrument.

2. Is such a tax constitutional only when enforced against citizens of the State by whose authority it is imposed, and does it become obnoxious to the commercial clause of the Federal Constitution when sought to be enforced against citizens of other States?

The general right of a State to levy taxes for revenue upon all commodities found and callings prosecuted within its limits, has but one exception in its exercise that brings it into conflict with that provision of the Federal Constitution giving Congress the exclusive right to regulate interstate commerce, and that is where the State law attempts to discriminate against citizens or commodities from other States. See, upon this point, *Woodruff* v. *Parham*, 8 Wall. 123; *Nathan* v. *Louisiana*, 8 How. (U. S.) 82; *Ward* v. *Maryland*, 12 Wall. 163, 418; *Welton* v. *Missouri*, 1 Otto, 275; *Railroad Co.* v. *Richmond*, 19 Wall. 584; *Brown* v. *Maryland*, 12 Wheat. 448; *Machine Co.* v. *Gage*, 10 Otto, 676; *Osborn* v. *Mobile*, 16 Wall. 479; *Pullman Car Co.* v. *Gaines*, 3 Tenn. Ch. 587.

*R. S. Buck*, of counsel for the appellant, argued the case orally.

*Booth & Myles*, for the appellee.

1. A license-tax on commercial travelling-agents is not a merely personal one on the calling, as contradistinguished from the tax on the goods sold by them, as in the case of peddlers (*Temple* v. *Sumner*, 51 Miss. 13), auctioneers, and resident merchants, but is in effect a tax upon the goods themselves, and should be so considered for the purpose of determining the constitutionality of it.

"'The general power of the State to impose taxes in the way of licenses upon all pursuits and occupations within its limits is admitted, but, like all other powers, must be exercised in subordination to the requirements of the Federal Constitution. Where the business or occupation consists in the sale of goods, the license-tax required for its pursuit is in effect a tax upon the goods themselves." *Welton* v. *Missouri*, 1 Otto, 278; *Brown* v. *Maryland*, 12 Wheat. 448.

2. The non-exercise of its power to regulate interstate commerce, on the part of Congress, is equivalent to a declaration that it shall be free and untrammelled. *Welton* v. *Missouri*, 1 Otto, 282; *Machine Co.* v. *Gage*, 10 Otto, 678.

Assuming, then, that Congress has by its non-action willed that interstate commerce shall be free, and that a tax imposed upon the drummer under the guise of a personal privilege is but another form of, and substantially a tax upon the goods sold by him, it logically follows that the tax imposed on Taylor in this case had the effect to interfere with, impede, and trammel interstate traffic, and to deny it the freedom guaranteed. See *Gibbons* v. *Ogden*, 9 Wheat. 1; *Almy* v. *California*, 24 How. (U. S.) 169; *Ward* v. *Maryland*, 12 Wall. 433; 15 Wall. 319; *State Freight-Tax Case*, 15 Wall. 272; 2 Black, 620; 2 Wall. 200; 6 Wall. 594–611; *Brown* v. *Maryland*, 12 Wheat. 448.

*B. B. Myles*, of counsel for the appellee, argued the case orally.

CHALMERS, C. J., delivered the opinion of the court.

The mayor and aldermen of the city of Vicksburg imposed a privilege-tax of $5 per week upon all commercial travellers and drummers, and sought to compel its payment from the relator by arrest and imprisonment. The relator sued out this writ of *habeas corpus* on the ground that the city authorities had no right, under their charter, to enact an ordinance imposing such a tax, and being sustained in this position by the judge below, was discharged from custody. The city appeals under that clause of our Habeas Corpus Act which gives to either party aggrieved the right to appeal. Code 1880, sect. 2312. The city rests its right to impose the tax upon a clause of its charter which empowers the Board of Mayor and Aldermen " to levy and collect for corporation purposes a privilege-tax upon the business, trade, or employment of all auctioneers, grocers, merchants, brokers, bankers, cotton-factors and cotton-sellers, retailers, taverns, hotels, boarding-house keepers, coffee-house keepers, retail liquor-dealers, confectioners, peddlers, junk dealers, and others of like character, as the board may designate." If drummers or commercial travellers are " of like character " with the followers of any of the callings enumerated, then the board had the power, by specific designation of them, to impose the tax. They are more nearly like merchants and peddlers than any of the others named, and yet they are quite unlike either. They follow no independent business ; they make no contracts for themselves, nor do they come, ordinarily, under any sort of personal obligation. They are mere solicitors of orders for others, and differ in no respect from clerks or salesmen except that they are ambulatory in their operations and do not usually carry or deliver the goods sold.

By their engagements they bind their employers, and not themselves, and they have no other interest in the result of the bargains made than any ordinary clerk would. It seems quite clear that the power does not exist under the charter to levy a privilege-tax on a clerk who remains in the storehouse

of his employer and there pursues the occupation of selling
his employer's goods.   Why should the fact that he walks
about the city or goes beyond its limits, doing the same thing,
give the added power?   If the clerk carried with him the
goods sold he would become a peddler, either for himself or
for those whose agent he was, and then the tax might be
imposed either upon the one or the other; but as he does not
do so, he cannot be embraced in the designation of a peddler.
When the city charter was enacted by the Legislature, the
occupation of a drummer or commercial traveller was not
only well known in this State, but for many years a very
large part of the commerce of the State had been transacted
by them; yet in the very full enumeration of the classes of
business men upon whom the city authorities were authorized
to impose a tax, they are not specifically designated.   It seems
at least doubtful, therefore, whether the Legislature intended
to embrace them, and this doubt becomes stronger when we
consider the impolicy of such delegation of authority.   How-
ever wise it might be for the State to derive a revenue from
the vocation of these peripatetic salesmen, it would practi-
cally amount to an extinguishment of the business to permit
every incorporated town in the State to do so.   As their
operations are confined to no particular locality, but embrace
ordinarily the limits of the State, it would seem that the tax
imposed upon them should be rather general than local in its
character.   However this may be, we cannot but regard it as
doubtful whether the city of Vicksburg has authority under
its charter to impose the tax in this instance; and the rule is
well settled that laws imposing duties or taxes are not to be
construed beyond the natural import of the language, and are
never to be construed as imposing burdens upon citizens upon
doubtful interpretation.   Potter's Dwar. on Stat. 190, note.

Affirmed.