WALTER L. CARNEY *v.* THOMAS HAMILTON, TAX COLLECTOR.

[42 South. Rep., 378.]

PRIVILEGE TAXES. *Laws* 1904, *ch.* 76, *sec.* 18 *p.* 62. *Coco-cola depot.*

A wholesale grocer, selling coco-cola in case lots as he sells other merchandise, who has paid the privilege tax required of a wholesale merchant for the year, is not subject to the tax, under Laws 1904, ch. 76, sec. 18, p. 62, imposed on persons maintaining a depot for the sale of coco-cola, colavine, and like drinks.

FROM the chancery court of Copiah county.

HON. ROBERT B. MAYES, Chancellor.

Carney, appellant, was complainant in the court below; Hamilton, tax collector of Copiah county, appellee, was defendant there. From a decree in favor of defendant the complainant appealed to the supreme court.

Complainant, who was engaged in the wholesale grocery business, sued out an injunction to restrain the defendant from proceeding by distress to collect from him a privilege tax of $150 for the year 1904, pursuant to instructions of the state revenue agent under Laws 1904, ch. 17, sec. 18, p. 62. This section levies a privilege tax of $150 on each factory or bottling establishment for the bottling of coca-cola, celery-cola, afri-cola, hecks-cola, cola-beta, colavine, nervo-cola, or any similar or proprietary drink, and $150 on each depot for the distribution or shipment of coca-cola, celery-cola, afri-cola, hecks-cola, cola-beta, colavine, nervo-cola, or any similar or proprietary drink. The suit was tried upon agreed statement of facts, as follows:

"Carney, the complainant, was engaged in the wholesale grocery business in the town of Crystal Springs during the year 1904-05, and had a place of business in said town in which he kept the goods, wares and merchandise (such as flour, meal, corn, oats, hay, meat, sugar, tobacco and other things usually

kept by wholesale grocery merchants for sale), which he sold by the wholesale to merchants in Crystal Springs and the surrounding country. That he also kept in said place of business coca-cola which he sold and distributed in single case and case lots, just as he sold and distributed the other merchandise kept by him, and that he never sold any coca-cola by the bottle. That during the year 1904-05 the said Carney made numerous purchases of coca-cola from the Canton Bottling Works, which is located at Canton, Miss., and from no one else, and that when said coca-cola was shipped to Carney, it was placed in his store, just as his other goods were placed, and the property in said coca-cola was in Carney, or, in other words, said coca-cola belonged to said Carney. That said Carney paid the privilege tax required of a wholesale merchant to carry on said wholesale grocery business during the year 1904-05, but did not pay the privilege license of $150 provided for by Laws 1904, ch. 76, sec. 18, p. 62, under the subdivision 'coca-cola and colavine.' It is further agreed that the tax collector of Copiah county was directed to assess said Carney for keeping a depot for distribution of coca-cola, as appears by the notice of assessment addressed to him by Wirt Adams, state revenue agent, and that he did so assess said Carney as directed, and entered the assessment on the personal assessment rolls of Copiah county; that subsequent thereto and in due time said assessment was formally and duly objected to by said Carney, and said objections were filed with the clerk of the board of supervisors of Copiah county, and the same were sustained by the board of supervisors of Copiah county; and that said revenue agent did not appeal from said order, assuming that the board of supervisors had nothing to do with the assessment. It is further agreed that said Canton Bottling Works paid the privilege tax provided for by the laws of 1904 in reference to bottling establishments for bottling coca-cola, etc., but this tax was paid at Canton, Madison county, Miss., and said Canton Bottling Works had no interest in the

coca-cola sold to Carney by it after the same was delivered to him. It is further agreed that the defendant, Hamilton, tax collector, was undertaking to distrain the property of complainant and collect the tax from complainant for keeping a depot for the distribution of coca-cola for the year 1904, as alleged in complainant's bill and as admitted in defendant's answer."

The court dissolved the injunction and rendered decree adjudging the complainant to be due the said privilege tax of $150, and also statutory penalty of $150 additional; awarded damages upon complainant's injunction bond to the extent of $25 as counsel fees to defendant, and dismissed the bill of complaint.

*J. S. Sexton,* for appellant.

The question here is whether the appellant, Carney, was maintaining a depot for the distribution or shipment of coca-cola, within the meaning of Laws 1904, ch. 76, sec. 18.

If we examine the language of the statute above referred to we find the words "depot for the distribution," and "depot for the shipment," of coca-cola, used interchangeably. And the words "manufacturer" and "distributor" used in the same way. There is not even a hint in the statute in reference to the sale of coca-cola, either by wholesale or retail, and, of course, Carney, the appellant, had a right to sell anything not prohibited by law under his license as a wholesale grocer, so the whole question turns here upon the meaning of the terms used by the statute, viz., "depot for the distribution or shipment of coca-cola," etc.

If, under the agreed statement of facts, Carney's place of business was a depot for the distribution or shipment of coca-cola, it was also a depot for the distribution or shipment of soap and matches, both of which he sold in cases and case lots, just as he did coca-cola, and never by the single box. Suppose that Carney had placed over his door, "Depot for distribution or

shipment of soap," and the ordinary citizen had stepped into this place of business and found it filled with bagging, ties, hay, etc., would he have thought that the sign over the door truly exhibited the nature of the business? Certainly not. If Carney was keeping a "depot" for the distribution or shipment of coca-cola, he was also, under the statement of facts, keeping a dozen other kinds of "depots."

It is shown that the coca-cola sold by Carney was bottled at Canton, Mississippi, by the Canton Bottling Works, which paid the tax of $150. If appellee's contention here is correct, the state is put in the attitude of taking $150 from the Canton Bottling Works for the privilege of bottling coca-cola, and yet putting a tax upon the retail dealers throughout the state which would be absolutely prohibitive; and it is put in the further ridiculous attitude of charging the retail dealer selling and distributing one small case containing two dozen bottle of coca-cola the same privilege tax which a large factory or bottling works plant is required to pay, even though that plant be large enough to supply the world.

The statute under consideration says nothing about the sale of coca-cola, which can be dispensed at soda-fountains under chapter 76, section 83, by paying a small privilege tax, ranging from $2.50 to $10. Under section 60 of the chapter the privilege tax on wholesale dealers in malt liquors only ranges from $25 to $100. Under the view of the court below it is apparent that wholesale dealers in ale, beer or malt liquors in cities of over five thousand inhabitants would be required to pay less privilege tax than a party in the most insignificant hamlet in the state would be required to pay for selling and distributing a single case of coca-cola.

Chapter 76, section 64, provides for a privilege tax of $50 on each oil depot. This is probably the first time that the word "depot" has been used in our privilege tax laws. Not until within recent years has such a thing as a central distrib-

uting agency or depot for oil been known in our state. One of the incidents of the growth of the great Standard Oil Company has been the establishment of great tanks of oil at appropriate places on the different railroad lines in the state, and these are known as oil depots. From them oil is distributed to the interior points. This new industry has grown to great size, and has in time furnished a basis of taxation. Now, in like manner, has been the growth of the coca-cola industry. Bottling factories have sprung up throughout the state, and were taxed for a long time at comparatively low amounts. The legislature has finally come to the view that the coca-cola business can stand a high tax, and the same has been raised to $150 on factories and bottling establishments where the beverage is prepared. The legislature conceived that depots for the shipment and distribution of this popular drink would soon be established over the state, and as the tax on factories was placed at $150, what more fair than that distributing points should be likewise taxed? Hence the origin of the statute.

The privilege tax statute of 1906 levies on *retail dealers* in coca-cola a tax of from $5 to $25, dependent upon the inhabitants of the place where sold. The last clause of the statute relative to coca-cola fixes a tax of $2.50 on "each person or firm selling any of the above drinks in bottles." Under this act of 1906 every sale of coca-cola must now have behind it a privilege tax. But such was not the case in 1905, the date concerned in this case.

Under the facts Carney must be held to have sold and distributed coca-cola just as he sold and distributed other merchandise. He distributed coca-cola just as he distributed hay, sugar, bacon; that is to say, such commodity was carried home by the man who bought the same from him. It is apparent that he merely "sold" coca-cola, and that he did not maintain a depot for the distribution and shipment of coca-cola within the meaning of the statute under consideration.

*Longino, Willing, & Wilson,* for appellee.

That appellant was liable in 1904 for the privilege tax of $150 for maintaining a depot for the distribution or shipment of coca-cola, seems to us beyond question. He was engaged in the wholesale grocery business in the town of Crystal Springs during the years of 1904 and 1905, and in his place of business he kept coca-cola in single cases and case lots, which he sold and distributed just as he sold and distributed other merchandise, and never in a single instance did he sell coca-cola by the bottle. His numerous purchases of coca-cola from the Canton Bottling Works were placed in his wholesale store just as his other goods, wares and merchandise were placed. • And the coca-cola was sold and distributed by the wholesale to merchants in Crystal Springs and the surrounding country. He was thus a wholesale dealer in coca-cola, maintained a depot in Crystal Springs for distribution of coca-cola, did distribute the same, and was hence liable for the privilege tax sought to be collected by the tax collector.

It is immaterial whether Carney sold or gave away coca-cola. The facts show that he maintained a depot at his place of business. Webster in his dictionary defines a depot to be "a place of deposit; any place of deposit for the storing or safe-keeping of goods; a warehouse; a storehouse." 23 Am. & Eng. Ency. Law (1st ed.), 298, states that the most elementary rule for the construction of a statute is that words and phrases should be used in their popular and common acceptation unless the subject-matter indicates that they should be used in a technical sense, and we must conclude that the appellant was maintaining a depot, inasmuch as he was maintaining a place of deposit for the storing and selling of coca-cola in wholesale quantities.

It is illogical in opposing counsel to say that the appellant did not distribute the coca-cola, but merely sold it. Appellant became a distributor when in the course of his wholesale business he distributed coca-cola in wholesale packages or cases

to the retail merchants of Crystal Springs and the surrounding country. Even if the Canton Bottling Works did pay the $150 privilege tax required of every factory or establishment for the bottling of coca-cola, this did not protect Carney or authorize him to maintain a depot for the distribution of coca-cola.

. Opposing counsel assert that our contention places the state in the ridiculous attitude of charging the retail dealer the same privilege tax as the great factory or plant which sells, possibly, to the whole world. Our answer is that the tax is not imposed upon the retail dealer, but upon the wholesale dealer; and it makes no difference whether the wholesale dealer sells one case containing two dozen bottles of coca-cola or ten thousand cases. If he is a wholesale dealer and maintains a depot from which he distributes and sells the coca-cola, he is liable for the tax. It is not a question of how much coca-cola is sold; it is a question of whether the business is wholesale or retail.

Under the circumstances Carney must be held liable for the $150 tax. Nothing but technical construction can reverse the case. "Where the language of a statute is susceptible of but one meaning it must receive that meaning. Courts are not to tamper with the clear and unequivocal meaning of words used, although the consequences may not be such as were contemplated by the legislature. There can be no departure from the plain meaning of a statute on the grounds of its unwisdom or of public policy." 23 Am. & Eng. Ency. Law (1st ed.), 299. "When once the intention is plain, it is not the province of the courts to scan the wisdom or policy of statutes." 23 Am. & Eng. Ency. Law (1st ed.), 302.

MAYES, J., delivered the opinion of the court.

This case was before me when I was presiding as chancellor, and was decided by me and appealed to this court. I am now satisfied that the case was decided wrong in the court below.

89 Miss.—48

On the facts as presented we do not think that Carney was maintaining a depot for the distribution or shipment of coca-cola within the meaning of Laws 1904, ch. 76, sec. 18, p. 62. The coca-cola was bought and sold by him as any other article of merchandise in conducting his business of wholesale grocer.

*Reversed and case dismissed.*