Planters' Lumber Co. v. Wells, Sheriff and Tax Collector.*

Same v. Johnson, City Tax Collector.

(Division B. March 14, 1927. Suggestion of Error Overruled April 11, 1927.)

[112 So. 9. No. 26329.]

1. Licenses. *Laws imposing privilege taxes are liberally construed in favor of person sought to be charged.*

Laws imposing privilege taxes are liberally construed in favor of persons sought to be charged with such taxes, and strictly construed as against claim of state or any political subdivision for taxes.

2. Licenses. *Legislature imposing privilege taxes on lumber yards is presumed to have adopted common understanding of lumber yard (Hemingway's Code, section 6542).*

The legislature in imposing privilege taxes on lumber yards by virtue of Hemingway's Code, section 6542, is presumed to have adopted common understanding as to what constituted lumber yard.

3. Licenses. *Lumber yard held liable for privilege tax assessed against lumber yard only, and not that assessed against store (Hemingway's Code, sections 6542-6544, 6589; Hemingway's Code Supp. 1921, section 6589).*

A lumber yard conducting its business in manner that lumber yards were commonly conducted, in that eighty-five per cent. of merchandise sold consisted of lumber, although keeping in connection therewith and selling other building materials, *held* liable for privilege tax only as assessed against lumber yards under Hemingway's Code, section 6542, and not liable for tax on stores under section 6589 and Hemingway's Code Supp. 1921,

section 6589, in view of Hemingway's Code, sections 6543, 6544, differentiating between privilege taxes on lumber dealers, or brokers, and buyers with that assessed against lumber yards.

*Corpus Juris-Cyc. References: Licenses, 37CJ, p. 213, n. 53, 56; p. 249, n. 28; Statutes, 36Cyc, p. 1189, n. 72, 75.

APPEAL from circuit court of First district, Hinds county.

HON. W. H. POTTER, Judge.

Separate actions by W. S. Wells, sheriff and tax collector, and by A. J. Johnson, city tax collector of the city of Jackson, against the Planters' Lumber Company, which actions were consolidated and tried together. Judgment for plaintiffs, and defendant appeals. Reversed and judgment rendered.

*George Butler,* for appellant.

I.   Under the facts alleged in appellant's second plea and admitted by the demurrers thereto, is the appellant liable for a privilege tax for conducting a store in addition to the privilege tax for conducting a lumber yard?

At the October term, 1885, the supreme court of this state in *Folkes* v. *State,* 63 Miss. 81, held that the word *store* as used in section 585, Code of 1880, which levied a privilege tax on "each store" was intended to designate any place where goods are deposited and sold by one engaged in buying and selling such goods, whether in a house or not.   The Code of 1880 did not levy a privilege tax on "lumber yards" and in the Folkes case it was held that a lumber yard on which lumber was stored and sold was a store.   In *Pitt* v. *Vicksburg,* 72 Miss. 181, a store was also defined.   In *Craig* v. *Patterson,* 74 Miss. 881, the Pitt case was reaffirmed.   It is, therefore, established that if there was no statute imposing a privilege tax upon lumber yards as such and by that name, under the authorities above cited, they would be liable to pay a privilege tax as a store.

It is perfectly apparent that various businesses would be taxable as a store under the Folkes, Pitt and Craig cases if they had not been specially dealt with by the legislature and placed in a separate and distinct class. The legislature has seen fit to take dealers in certain classes of merchandise out of the "store" class and place them in a separate and distinct class, making the tax higher or lower than the tax on a store, depending upon the nature and character of the business.

It is significant that section 3367, Code of 1892, the first statute imposing a tax upon lumber yards as such, and section 3837, Code of 1906, impose the tax on "each lumber yard or dealer." By section 8, chapter 73, Laws of 1908, and section 2, chapter 74, Laws of 1908, the legislature fixed a tax on "lumber yards" and a separate and distinct tax on "lumber dealers or brokers." Up to this time a lumber dealer, though not conducting a lumber yard, paid the same tax as a lumber dealer selling lumber and other commodities through a lumber yard. The legislature manifestly recognized that a dealer who sold no commodities other than lumber should be permitted to sell a greater quantity of lumber for the same tax than that paid by a dealer selling lumber and other commodities through a lumber yard, the separation was then made, the lumber yard dealer and the other lumber dealer placed in a different class, and the tax graduated and fixed accordingly.

The fact that appellant deals in articles other than lumber does not affect the situation. The legislature had this well-known custom of business in mind when it levied a privilege tax upon lumber yards. And if the legislature had intended that lumber yards should pay one tax as a lumber yard and another as a store, would it not have said so?

II. Are the act and ordinances imposing a privilege tax on lumber yards constitutional if construed to limit licensed lumber yards to the sale of lumber, and is this an unconstitutional discrimination?

We grant that the legislature can classify, we say that they have classified, the amount of privilege upon store, not as stores, but as wharf boats, trading boats, lumber yards, warehouses, meat markets, cigar stands, etc. They have classified lumber dealers as those dealing at yards and those dealing without placing the lumber on yards. They have placed a higher tax proportionately on lumber yards than they have on lumber dealers, because the legislature knew that lumber yards sold other building materials than lumber, while lumber dealers sold only lumber. This court will not impute to the legislature an intent to discriminate. *Smith* v. *Perkins,* 112 Miss. 870; *Johnson* v. *Long Furniture Co.,* 113 Miss. 373; *Hyland* v. *Sharp,* 88 Miss. 567; *Adams, St. Rev. Agt.,* v. *Standard Oil Co.,* 97 Miss. 879; *Ballard* v. *Oil Co.,* 81 Miss. 507; *Railroad* v. *Adams,* 90 Miss. 559; *Vicksburg* v. *Mullins,* 106 Miss. 217; *Adams, St. Rev. Agt.,* v. *Miss. Lbr. Co.,* 84 Miss. 23; *Toombs* v. *Sharkey,* 106 So. 273.

We respectfully submit that if the act is given the construction which appellee's counsel contends for, it creates an arbitrary discrimination and runs counter to the equal protection clause of the state's constitution.

If two constructions of a statute are admissible and to construct it one way would present grave constitutional questions, the court will adopt such construction as will eliminate the question of the constitutionality of the statute. *N. O., etc., R. R. Co.* v. *State,* 110 Miss. 290; *Robinson* v. *State,* 108 So. 903; *Staple Co-op. Ass'n* v. *Hemphill,* 107 So. 24.

III. Has the city the power to impose a one hundred per cent penalty? The statutes may be searched in vain for any legislative authority for a municipal corporation to impose a one hundred per cent penalty for the failure to pay a privilege tax when due. It will not do to say that the municipality has the implied power to impose a one hundred per cent penalty by reason of the express grant of power to impose and collect the tax.

19 R. C. L. 976; *Leonard* v. *Canton,* 35 Miss. 189; *Sykes* v. *Columbus,* 55 Miss. 115; *Crittendon* v. *Booneville,* 92 Miss. 277, 45 So. 723; *Wise* v. *Yazoo City,* 96 Miss. 507, 51 So. 433; *Hazlehurst* v. *Mayes,* 96 Miss. 656, 51 So. 890; *Steinroth* v. *Jackson,* 99 Miss. 354, 54 So. 955; *Jackson* v. *Newman,* 59 Miss. 385; *Pitt* v. *Vicksburg,* 72 Miss. 181; *Biloxi* v. *Bories,* 78 Miss. 654; *Harris* v. *Water Valley,* 78 Miss. 659; *Johnson* v. *Hartford Fire Ins. Co.,* 109 Miss. 808; *Zemurray* v. *Boulden,* 87 Miss. 583.

The plea which goes to that part of the city's declaration attempting to collect a penalty is good. 16 Ency. Pl. & Pr. 574; *Williams* v. *Harris,* 2 How. (Miss.) 627; and *Harrison* v. *Balfour,* 5 S. & M. 304.

IV. Did the enactment of the several ordinances set forth in and exhibited with the fourth plea in the suit brought by the city tax collector operate as a repeal of the prior ordinance and thereby preclude the city from claiming the tax and penalty for the period of time prior to September 1, 1923? See section 3406, Code of 1906 (section 5935, Hemingway's Code).

The above sections are similar in import to section 61 of the Constitution of Mississippi and go further in that it is expressly provided that when such ordinance is amended or revised "the original shall thereby be repealed;" whereas, under section 61, the repeal takes place by implication. *Nations* v. *Lovejoy,* 80 Miss. 401.

The court is committed to the doctrine that the right to collect the tax was abrogated by the amendment and re-enactment of these several ordinances where they contained no saving clause. *Bradstreet* v. *Jackson,* 81 Miss. 233; *Crowe* v. *Cartledge,* 99 Miss. 281.

If, therefore, the several ordinances undertaking to impose the tax repeal upon the prior ordinance, as stated in section 3406, Code of 1906, it is clear that as to the taxes and penalties mentioned in the pleas, the plea is good, and the demurrer should have been overruled.

*J. H. Sumrall,* for appellee.

I.   The question here is whether or not it was the intention of the legislature, when imposing a privilege tax on "lumber yards" to impliedly permit the handling of any other commodities which might be dealt in by lumber yards for the convenience of their patrons, regardless of the classification of such articles of material or the amount thereof.

Counsel for appellant calls the court's attention to *Folkes* v. *State,* 63 Miss. 81; *Pitt* v. *Vicksburg,* 72 Miss. 181; and *Craig* v. *Patterson,* 74 Miss. 881, relied on by the appellees to demonstrate the fact that it is the long-established policy of this state to class as a "store" all establishments engaged in the business of selling merchandise, or any article sold, until some specific class of merchandise is singled out by the legislature as being entitled to pay a special privilege tax for the sale thereof.

The cases referred to are simple authority, in my opinion, for the contention that all articles of merchandise or all objects of sale which are not specifically classified by the legislature and a special tax imposed for the sale thereof come clearly within the general privilege tax levied on a "store" for the sale of such articles. To my mind, the effect of the passage of a statute specifically imposing a privilege tax upon lumber yards, has the effect of separating the business of selling lumber kept in stock for sale, from the general class of merchandise which comes under the general term of "store."

The language of the statute in force during the several years included in the demand graduates the tax according to number of feet of lumber sold annually. Reference to the volume of business done and number of feet, indicates, according to the opinion of appellee, that this arbitrary fixing of the amount of tax in proportion to the number of feet sold, without reference to the kind, character, or value of such lumber, plainly indicates that this tax imposed has reference solely to that restricted

business of selling lumber from a "lumber yard" and being restricted solely to that class of lumber which is measured by board feet.

To my mind, the contention of appellant is just as unreasonable as a contention that might be made that where a merchant selling groceries also handles Coca-Cola and has paid the specific tax required by law for the privilege of selling Coca-Cola, would be allowed to sell any article of merchandise that might be classed as edible, merely because the customers buying Coca-Cola might desire to procure some choice tidbit, or relish, to be consumed while quaffing this delightful beverage.

Counsel for appellant cites many cases in support of his contention that there is a discrimination between the two classes of "lumber dealers" as contemplated by the statute, but when an analysis is made of the two statutes in question and the manifest purpose of the legislature in arriving at the difference in quantity of lumber which may be sold for the respective taxes provided in the two statutes is considered, it is evident that the elaborate citation of authorities which counsel has made has no application whatever since the discrimination which he points out does not exist; but on the other hand, it is manifest that the legislature sought to permit an equal pecuniary advantage to the two classes of dealers in lumber by graduating the tax as it did, in accordance with the relative amount of pecuniary profit received by each for lumber in the respective quantities provided for.

As to the constitutionality of the statute involved, when considered in the light of the alleged discrimination shown between "lumber yards" and "lumber brokers," we submit that a long line of decisions by the supreme court of our state has definitely and unalterably settled the question as to the right of the legislature to ignore the uniformity provision of our state constitution so long as it treats all persons in the same classes alike. *Daily* v. *Swope,* 47 Miss. 367.; *Clarksdale Ins. Co.* v. *Cole,*

87 Miss. 637; *Hyland, Sheriff,* v. *Sharp,* 88 Miss. 567; *City of Jackson* v. *Miss. Fire Ins. Co.,* 132 Miss. 415.

II.  Another proposition raised by appellant in his brief is whether or not the city of Jackson has the power to impose the one hundred per cent penalty on delinquent privilege taxes.

See the following authorities as to the sufficiency of the ordinances of the city of Jackson wherein the provision is contained that any person or corporation who shall exercise in the city any of the privileges taxed by law without first paying the tax and procuring the license required shall be liable for double the amount of the tax, and in which it is made the duty of the tax collector to collect the amount, issue a separate license therefor and to endorse across the face of the separate license the words "Collected as Damages." 19 R. C. L. 815, section 120; *Richards* v. *Magnolia,* 100 Miss. 249; *Corinth* v. *Sharp,* 107 Miss. 396; *Covington County* v. *Conner Lbr. Company,* 107 Miss. 368; *Norwood* v. *Lbr. Mineral Co.,* 65 So. 468; *Yazoo Delta Investment Co.* v. *Suddoth,* 70 Miss. 416.

It was held in the case of *Bennett* v. *Jones,* 107 Miss. 880, that the one hundred per cent penalty imposed for the failure to pay a privilege tax when due was not an unconstitutional provision.  As additional authority on the question as to the sufficiency of the adoption of the privilege tax laws of the state by a municipality we call the court's attention to *Winfield* v. *Jackson,* 89 Miss. 272; and *Smothers* v. *Jackson,* 92 Miss. 327.

III.  I shall deal now specifically with the contention of appellant that there is no statutory authority for the imposition of the one hundred per cent penalty, for the failure to pay a privilege tax when due.  See section 73, chapter 104, Laws of 1920, providing for the imposition of one hundred per cent penalty upon all persons; firms, partnerships or corporations liable for privilege taxes

who fail to procure a license before beginning the business taxed, or who shall fail to renew during the month in which it is due. See section 5983, Hemingway's Code (section 3424, Code of 1906).

The penalty becomes a part of the tax when due. *State ex rel. Roberson, Attorney-General,* v. *C. & G. R. R. Co.,* 129 Miss. 564, on suggestion of error, 129 Miss. at 882.

IV. The only remaining question presented for consideration by counsel for appellant is whether or not sash, doors, windows, etc., which are composed in part of lumber, should be included in the articles which a lumber yard should be permitted to sell under its lumber yard license.

In my opinion, the only answer necessary to this contention is a reading of the statute imposing the privilege tax on lumber yards, which uses as its only basis for fixing the amount of tax imposed the number of feet, evidently meaning board feet, sold by such lumber yard within a twelve-month period.

Argued orally by *Geo. Butler,* for appellant, and *J. H. Sumrall,* for appellee.

Anderson, J., delivered the opinion of the court.

Appellees, W. S. Wells, sheriff and tax collector of Hinds county, and A. J. Johnson, city tax collector of the city of Jackson, each brought a separate action in the First district of the circuit court of Hinds county against the appellant, Planters' Lumber Company, to recover, under chapters 73 and 74, Laws of 1908 (Hemingway's Code, section 6589), and chapter 104, Laws of 1920 (Hemingway's Code Sup., section 6589), for Hinds county and the city of Jackson, respectively, privilege taxes alleged to be due them by appellant on an alleged "store" operated by appellant in the city of Jackson, in Hinds county, for the period beginning September 1, 1918, and in-

cluding September 1, 1925. By agreement of the parties the two cases were consolidated and tried together on agreed facts before the judge, sitting both as judge and jury. A judgment was rendered in favor of appellees, from which judgment appellant prosecutes this appeal.

In addition to the general issue, appellant pleaded four special pleas. The view of the case we take renders it unnecessary to notice any of the special pleas except the first. Leaving off the caption and the name of the appellant's attorney signed thereto, a copy of that plea follows:

"And comes the defendant, Planters' Lumber Company, by Geo. Butler, its attorney, and for further plea in this behalf says: That the plaintiff ought not to have and maintain its action aforesaid against defendant, because it says that on September 1, 1918, and for many years prior thereto, and at all times since said date, the defendant has owned, conducted, and operated a lumber yard, in the city of Jackson, Hinds county, Miss., and duly paid the maximum privilege tax imposed upon 'lumber yard' by chapter 73, Laws of 1908, as subsequently amended by section 34, chapter 104, Laws of 1920; that in the conduct of its said business the defendant owned and conducted in said city, about one-quarter of a mile north of the main street and business section thereof, a business commonly known and called a lumber yard, on about one square of land which it owned, and upon which was and is situated an office building, wherein it kept and keeps its records, books, and papers and its clerical force, and upon which it has constructed and maintained during all the times aforesaid, and still maintains, a railroad side track leading from the main line of the Illinois Central Railroad to the rear of said premises, which it used and uses in and about the receipt and delivery of lumber and other materials hereinafter mentioned, acquired, handled, and sold in the conduct of its said business, and two lumber sheds and lumber ramps used and maintained

for the receipt and storage of lumber handled by the defendant in its business, and other commodities hereinafter mentioned, and had and has walled up a portion of one of said sheds and has used and uses the same in the receipt, storage, and sale of transom, doors, and windows, composition shingles and roofing, cement, lime, and plaster, and what is commonly known as builder's hardware, consisting of sash weights and cords and pulleys, grates, nails, door and window hinges, and other building hardware similar in kind, and also other items of building supplies and material similar to that hereinbefore enumerated, and also on said premises erected and maintained lumber yards and ramps upon which lumber and shingles and material of like kinds were and are kept and stored; that in the operation of said business the defendant bought and buys large quantities of lumber from various and sundry sawmills located away from Jackson, Miss., and sold and sells same both at wholesale and retail; that practically all of the lumber bought and handled by the said defendant was and is brought into said yard and stored, and, when sold, delivered from said yard to its customers; that, in addition to the lumber sold and delivered by the defendant as aforesaid, it bought and buys, and stored and stores, upon said premises, and sells and delivers therefrom, the building material and supplies above mentioned in connection with said 'lumber yard business, and not otherwise; that seventy-five per cent in value of all materials bought and sold by the defendant consists of lumber and ten per cent shingles, laths, sash, doors, and windows and articles of like kind, making a total of approximately eighty-five per cent in value of all materials handled and sold by defendant as aforesaid consisting of lumber, sash, doors and windows, and articles of like kind, and the remaining fifteen per cent consisting of other building materials.

"That prior to 1885 and continuously since said date, lumber yards in the state of Mississippi in the usual and customary course of trade and business have handled

147 Miss.—19.

and handle lumber, shingles, laths, sash, doors, windows, and other articles of like kind, and the other building material aforesaid, as a part and parcel of the lumber yard and lumber yard business, and during said time the lumber yard business consisted of dealing in the various kinds of building materials aforesaid, and that this custom and course of business and trade, during the time aforesaid, was well known and established in the state of Mississippi and well known and established when the legislature of said state imposed the first privilege tax upon lumber yards, and has continued to be so well known and established continuously since said date; that prior to the imposition of a privilege tax upon lumber yards as such the same were considered as stores within the meaning of the privilege tax laws of this state, and so paid upon, but that the same have not been considered as stores within the meaning of the privilege tax laws of the state of Mississippi, since a privilege tax was first imposed upon lumber yards in 1890, or prior thereto; that defendant has conducted and conducts no business, has conducted and conducts business in no way, and has kept and keeps, and stored and stores, and sold and sells, no articles of merchandise, other than that in the way hereinbefore set forth, and therefore avers that it is not liable for the payment of a tax as a store in the business conducted by it, and this defendant is ready to verify."

To the first plea appellees interposed a demurrer, which was sustained. The case thereupon was tried on the general issue, and agreed facts embodied in writing and made a part of the record. For the purpose of the question we decide—which is the main question in the case—it becomes necessary to set out only paragraph 3 of the agreed facts:

"That during the time mentioned in the declaration the business of defendant, conducted by the defendant, was what is commonly known and called a lumber yard business. That during the time mentioned in the declaration seventy-five per cent in value of all materials

bought and sold by defendant consisted of lumber, ten per cent wooden shingles, laths, sash, doors, and windows · and articles of like kind, making a total of eighty-five per cent in value of all materials handled and sold by defendant as aforesaid, consisting of lumber, sash, doors, and windows and articles of like kind, and the remaining fifteen per cent consisting of other building materials, such as composition shingles, roofing, cement, lime, and plaster, and what is commonly known as builder's hardware, consisting of sash weights and cord, pulleys, grates, nails, door and window hinges, and other building hardware similar in kind, and other items of building supplies and material not included in such articles as lumber, roofing, shingles, laths, sash, doors, and windows, and articles of like kind, hereinafter called 'other materials.' ''

For the period involved (beginning with September 1, 1918, and including September 1, 1925) privilege taxes for carrying on the lumber business were covered by section 8 of chapter 73, Laws of 1908, sections 2 and 3 of chapter 74, Laws of 1908 (Hemingway's Code, sections 6542 to 6544, inclusive), and sections 34 and 35 of chapter 104, Laws of 1920 (Hemingway's Supp. sections 6542 and 6544), which statutes follow:

"6542. (3837) *Lumber Yards.*—8. On each lumber yard, whose annual sale exceeds one-half million feet of lumber, one hundred dollars. Same, on each lumber yard whose annual sales are less than one-half million feet, but exceeds two hundred and fifty thousand feet, fifty dollars.

"Same, on each lumber yard whose annual sales exceed one hundred thousand feet, but do not exceed two hundred and fifty thousand feet, twenty dollars.

"6543. *Lumber Dealers or Brokers.*—2. On each lumber dealer or broker whose annual sale of lumber exceeds twenty million feet, one hundred fifty dollars.

"Same, when annual sale of lumber exceeds ten million feet and does not exceed twenty million feet, one hundred dollars.

"Same, when annual sale of lumber exceeds five million feet but does not exceed ten million feet, fifty dollars.

"Same, when annual sale of lumber is five million feet or less, twenty-five dollars.

"Provided, that any one paying a privilege tax to operate a lumber yard shall not be liable to a privilege tax as a lumber dealer or broker.

"6544. *Lumber Buyer.*—3. On each person or firm engaged in buying lumber in this state, twenty-five dollars.

"But this shall not apply to an agent buying for a lumber yard on which a privilege tax is paid.

"Provided, this shall not apply to the owner of a lumber yard or to a lumber dealer or broker paying a privilege license as such in this state.

"6542. (3837) *Lumber Yards.*—34. On each lumber yard whose annual sale exceeds one-half million feet of lumber, two hundred dollars.

"Same, on each lumber yard whose annual sales are less than one-half million feet, but exceed two hundred and fifty thousand feet, one hundred dollars.

"Same, on each lumber yard whose annual sales do not exceed two hundred and fifty thousand feet, twenty dollars.

"6544. *Lumber Buyer.*—35. On each person, firm, or corporation engaged in buying lumber in this state. twenty-five dollars.

"But this shall not apply to any person or firm who has paid a privilege tax for buying lumber as an incident to some other business."

During the period involved, there were also privilege taxes imposed on stores by chapter 73, Laws of 1908 (Hemingway's Code, section 6589), and section 59 of chapter 104, Laws of 1920 (Hemingway's Supp., section 6589).

For all the years appellant has carried on its business, it has paid privilege taxes on a "lumber yard." Appellees contend that, because of the fact that appellant, in connection with its lumber yard business, kept and sold shingles, laths, sash, doors, windows, and other building materials, it was liable to and should have paid privilege taxes on a "store," as well as a "lumber yard." Appellant by its special plea set up, and the agreed facts sustained the allegation of the plea, that during the period involved appellant conducted in the city of Jackson a lumber yard; that it was a business commonly known as a lumber yard, and was so known in 1908 when chapters 73 and 74 of the Laws of 1908 (Hemingway's Code, sections 6542 to 6544, inclusive) were enacted; that seventy-five per cent of all the material bought and sold by appellant consisted of lumber; that ten per cent consisted of wooden shingles, laths, sash, doors, and articles of like kind, making a total of eighty-five per cent; and the other fifteen per cent of building materials, such as composition shingles, roofing, cement, lime, and plaster, and what is commonly known as builder's hardware, consisted of sash weights and cord, pulleys, grates, nails, door and window hinges, and other building hardware similar in kind. The agreed facts state the common understanding of the character of the business carried on by appellant in this language:

"That during the time mentioned in the declaration, the business of the defendant conducted by the defendant was what is *commonly known and called a lumber yard business.*" (Italics ours.)

Then the agreement goes on and sets out, in detail, the proportions of each kind of material, as above shown.

In determining the question whether appellant was liable for privilege taxes on a store, as well as on a lumber yard, the principle of law should be kept in mind that laws imposing privilege taxes are liberally construed in favor of the person sought to be charged with such taxes, and therefore strictly construed as against the

claim of the state or any of its political subdivisions for such taxes. *Ex·parte Taylor*, 58 Miss. 478, 38 Am. Rep. 336; *Railroad Co.* v. *State*, 62 Miss. 105; *Bell* v. *Kerr*, 80 Miss. 177, 31 So. 708; *Wilby* v. *State*, 93 Miss. 767, 47 So. 465, 23 L. R. A. (N. S.) 677.; *Bluff City Railway Co.* v. *Clark*, 95 Miss. 689, 49 So. 177; *State* v. *Grenada Compress Co.*, 123 Miss. 191, 85 So. 137; *Sperry* v. *Harbison*, 123 Miss. 674, 86 So. 455.

The legislature, in imposing privilege taxes upon lumber yards, is presumed to have adopted the common understanding of what constituted a lumber yard. In *Mitchell* v. *City of Meridian*, 67 Miss. 644, 7 So. 493, in which case there was involved the construction of the statute imposing a privilege tax on sewing machine agencies, the court said, among other things:

"Privileges are taxed in reference to the known course of business."

In *Carney* v. *Hamilton*, 89 Miss. 747, 42 So. 378, the court had under consideration the statute imposing a privilege tax on each depot for the distribution or shipment of Coca-Cola. Carney operated a wholesale grocery business, and in his place of business kept for sale flour, meal, corn, oats, and other things usually kept by wholesale grocers. In addition, he kept and sold, in case lots, Coca-Cola. The question was whether Carney was liable for a privilege tax on a depot for the distribution or shipment of Coca-Cola in addition to his privilege tax for conducting the business of a wholesale merchant. The court held that the sale of Coca-Cola by Carney was a mere incident to his business as a wholesale merchant; that, although he sold and distributed Coca-Cola in single cases and in case lots, that did not constitute a Coca-Cola depot for the distribution and shipment of Coca-Cola in the sense of the statute.

In *Levee Commissioners* v. *Oil Co.*, 91 Miss. 480, 44 So. 828, the court construed the statute imposing a privilege tax on lint cotton and also seed cotton not ginned in the levee district. The court said, in considering the

case, what constituted lint cotton and what constituted seed cotton was to be determined by the established meaning of those phrases at the time of the passage of the statute.

If appellees are right in their position, there would be no difference whatever between the character of the business of a lumber yard and that of a lumber dealer. The statute, however, makes a very marked difference between the two. The privilege tax on a lumber yard whose annual sales exceeded one-half million feet of lumber was one hundred dollars under section 8 of chapter 73, Laws of 1908; while under section 2 of chapter 74, Laws of 1908, for a privilege tax of two hundred fifty dollars, a lumber dealer was permitted to sell annually twenty million feet or more; and where the sales ranged between ten million feet and twenty million feet, the tax was one hundred dollars; and where the annual sales ranged between five million feet and ten million feet, the tax was fifty dollars. It is evident that the legislature did not intend that a "lumber yard" and a "lumber dealer" should mean the same thing, otherwise each one would not have been dealt with by a separate section of the statute, and such widely different privilege taxes imposed on each. Appellees argue that because of the fact that the statute imposed a graduated privilege tax on lumber yards based on the number of feet of lumber annually sold, shows that the legislature did not understand that a lumber yard business included the purchase and sale of any other material except lumber. We do not think there is much force in that position. Privilege taxes on lumber yards are graduated by the statute, as they are on lumber dealers and stores. The tax had to be graduated according to some standard. The legislature saw fit, in graduating the tax, to disregard other building materials than lumber kept and sold in a lumber yard. Probably this was done to avoid some supposed inconvenience.

Applying those principles to the case in hand, we are of the opinion that appellant, as it conducted its business for the period involved, was only liable for a lumber yard privilege tax.

*Reversed, and judgment for appellant.*