J. F. HALL & Co. v. TRAPP, SHERIFF AND TAX COLLECTOR.

(Division A. Nov. 4, 1929.)

[124 So. 343. No. 28091.]

James A. Finley, of Tupelo, for appellant.

Mitchell & Clayton, of Tupelo, for appellee.

McGowen, J., delivered the opinion of the court.

O. T. Trapp, sheriff and tax collector of Lee county, Miss., sued J. F. Hall & Co., the appellant here, in the

justice of the peace court, for thirty dollars for privilege tax, and thirty dollars penalty. Judgment was entered against the appellant, and an appeal was prosecuted to the circuit court, where a jury was waived and the case tried by the judge, and judgment was there entered for the thirty dollars privilege tax and thirty dollars penalty, and appeal is prosecuted here.

The tax sought to be imposed is in virtue of chapter 126, Laws of 1926, which is as follows:

"An Act fixing a privilege tax on each agency for the sale of water-work plants, electric light plants, carbide plants, acetylene and other light plants of like nature, where an agency is established in this state or where such plants are kept on exhibition to induce sale. Privilege tax on each agency for sale of water-work plants, etc.

"Section 1. Be it enacted by the legislature of the state of Mississippi, That there be and is hereby levied a privilege tax on each agency for the sale of water-work plants, electric light plants, carbide plants, acetylene plants, frigidaire apparatus, and other plants of like nature, where located in this state the following tax, to-wit: . . . In cities of over five thousand and not more then twenty thousand inhabitants, thirty dollars.

The business in this case seems to have been managed by the appellant, J. F. Hall, who was engaged in selling frigidaires and other merchandise in the city of Tupelo, Miss. He has a place of business there in which he usually keeps a stock of merchandise, and a special display room for frigidaires and parts. He employs no agents to travel for him and pays cash for the frigidaires and their products, sold to him by H. R. Colby, a distributor for same sold by a frigidaire corporation of Dayton, Ohio. By his contract with Colby, the distributor, appellant was given the exclusive right to sell these frigidaire products in the counties of Lee, Itawamba, and Mon-

roe, in this state, this being evidenced by a written agreement, the main features of which, so far as this case is concerned, we content ourselves with calling attention to. By section 4 of that contract it was agreed that appellant was not sole agent or legal representative of the distributor for any purpose whatsoever, and he was not granted any right to assume or create any obligations or responsibility, expressed or implied, in behalf or in the name of the distributor, or to bind the distributor or frigidaire corporation in any manner whatsoever. By section 5 it was stated that the agreement was to continue in force and govern all relations and transactions between the parties until canceled. It was also stipulated that, so long as the dealer sold the products satisfactory to the distributor, they would not sell within his territory. The dealer agreed to keep a storeroom to display articles and to do all his own installing of the plants, and agreed to carry such stock and parts and pay for same as in the distributor's judgment was necessary. The dealer (appellant here) agreed that all the salesrooms and stock should be subject to inspection by the distributor at reasonable times, and to have his books audited once a year. The dealer further agreed to make weekly reports as to sales, and it was further agreed that, if the business relations were terminated, that the distributor, *at his option,* had the right to repurchase all the frigidaire stock on hand, at cost price, etc.

The decision of this case hinges upon whether or not Hall (the appellant) was conducting an agency or not. It was shown that he paid regularly a mercantile license, and it was also shown that, if he did not have any of the frigidaire parts on hand, he would order same for a customer, and pay the bill of lading in cash, and would sell frigidaires to the customers usually on the installment plan.

"Agency" is defined in Webster's New International Dictionary as: "Faculty or state of acting or of exerting power. 2. Office of an agent or factor—relation between a principal and his agent—business of one intrusted with the concern of another. 3. The place of business or district of an agent."

In 2 C. J., page 419, we find this definition: "Agency, in its broadest sense, includes every relation in which one person acts for or represents another by his authority. . . . The term, 'agency,' however, is sometimes used in senses other than to denote the legal relations between a principal and his agent. Thus it is sometimes used to denote the place at which the business of a principal is transacted by the agent, and when thus used, the word does not necessarily imply the relation of agency." 2 C. J., p. 420. The cases of Lauer Brewing Co. v. Schmidt, 24 Pa. Super. Ct. 396, and Morgan, Oates & Co. v. Com., 128 Ky. 813, 109 S. W. 907, are cited as sustaining the contention of appellee.

As we view the facts in this case, the dealer (appellant) was simply selling his own merchandise under an agreement to handle exclusively the frigidaire products as his own products from the time they were delivered to the carrier, and the only interest the distributor had in his stock was to see that he pushed the sale of their products. It is not unusual for merchants to handle specific products and to be assisted by distributors of manufacturers in pushing sales. There was nothing in this transaction to come within any of the terms of the definition of the word "agency."

We do not think the appellant in this case is liable for the privilege tax as imposed by the statute which we have quoted above.

Reversed and judgment here for the appellant.