MRS. THOMAS L. BAILEY, STATE TAX COLLECTOR *v.*

MONTGOMERY WARD & CO., INC., et al.

No. 39428 January 3, 1955 76 So. 2d 813

*Pylës & Tucker*, Jackson, for appellant.

*Butler, Snow & O'Mara; Stevens & Cannada,* Jackson, for appellee.

548

ETHRIDGE, J.

This case involves the question of whether a state-wide privilege tax applies to the operations of appellee, Montgomery Ward & Co., Inc. Appellant, Mrs. Thomas L. Bailey, State Tax Collector, instituted this suit in the Chancery Court of the First Judicial District of Hinds County against appellee Montgomery Ward & Company, and also against the other three appellees as garnishees in attachment, seeking to collect the tax for 1948 to 1953, inclusive. The Chancery Court held that appellee was not liable for it.

The statute in question is Section 42 of Chapter 138, Miss. Laws of 1944, being the same as Miss. Code of 1942, Section 9623. In 1944, the privilege tax laws of Mississippi were revised, codified, and divided into two different types of privilege taxes. Miss. Laws 1944, Chapter 137, pp. 156-223, was a lengthy statute of 232 sections, designated as the "Local Privilege Tax Law," for municipalities and counties.

Miss. Laws 1944, Chapter 138, pp. 223-262, designated as the "State-wide Privilege Tax Law," consisted of 72 sections and levied state-wide privilege taxes upon various activities. The title of Chapter 138 is short, and

preceding each section therein is a "lead line" or subtitle, which is a part of the statute and descriptive of the immediately following tax. The statute here in question, Section 42, Chapter 138, Miss. Laws 1944, is as follows:

"Sewing machine agents and agencies.

"Sec. 42. Upon each person engaged in the sale, lease or exchange of sewing machines, or in charge of a certain district or territory, for the sale, lease or exchange of sewing machines, and employing other agents, a state-wide tax of ................................................................$500.00.

Provided, a person liable for the tax imposed by the preceding part of this section may pay $100.00 for one county in which he intends to do business and $50.00 for each additional county.

"Each person paying and obtaining a state-wide license under the foregoing provisions of this section, may employ other agents and shall secure for each agent a state-wide license of ..............................................$10.00."

Appellee operates a large retail department store on Capitol Street in the City of Jackson, Mississippi. This is the only store which it has in Mississippi. That store sells goods, wares, and merchandise of many different kinds. In conducting its retail store business, appellee does not operate as an agent or agency, but as an independent retailing organization selling its own merchandise on its own behalf. Appellee did a gross merchandising business from its store in Jackson in the year 1952 of $961,318. Sales of sewing machines for that year aggregated $3,785. Appellee's sewing machine business therefore amounted to .39 percent of its total sales, being less than one-half of one percent of its gross sales.

Appellee has paid the store merchandise privilege tax required by Code of 1942, Section 9696-178, which is "upon each person operating a wholesale or retail store for the sale of goods, wares and merchandise . . ." This tax is on a graduated scale to a maximum of $1,840 a year, based upon the value of the stock of the store.

This store privilege tax is under the local privilege tax law, Miss. Laws 1944, Chapter 137, Section 174, and is paid to the City of Jackson. Appellee also pays to the City of Jackson the local privilege taxes on auto accessories, battery station, radios, oil pumps, refrigerators and washing machines. In 1952 appellee paid to the state and its subdivisions ad valorem, privilege and income taxes aggregating approximately $13,000.

In 1952 appellee sold thirty sewing machines, in 1951 approximately forty, and in 1950 about fifty. All sewing machines bought and sold by appellee are manufactured by the National Sewing Machine Company at its factory in Illinois. Appellee does not own National and has no connection with it except to purchase the machines from it for cash. National does not retain any title or control over the sewing machines, which are bought outright. When appellee receives them from National they are completely assembled. They are sold under the name of Montgomery Ward Sewing Machines. Appellee does not purchase the entire output of National, which is a large company and sells machines under its own brand name on the open market.

L. H. Flood, store manager of appellee's store in Jackson, testified that the Jackson store usually has between forty-five to fifty employees. It sells sewing machines as a part of its general store business, and has no special department for them, sewing machines being included in the appliance group. Appellee has no salesmen who specialize in the sale of sewing machines. They are general appliance salesmen. They work the usual working day on the floor in the store, and do no outside canvassing, but if a customer indicates an interest in a machine, the salesman will follow the customer up, trying to complete the sale. It is only by appointment outside of the store that the salesman sells appliances. Since they are on a commission from six percent to eight percent and are not allowed automobile expenses, this imposes on them a practical limitation upon the territory they can

cover. In the event the appliance salesman makes a sale upon a follow-up outside of the store, he brings the order to the store, and later appellee's truck delivers the machine. In the case of a credit sale, appellee's credit department would have to approve it.

Richard J. Titus, Jr., an area supervisor of sewing machines for Sears Roebuck & Company, testified that from 1928 to 1937 he worked for the Singer Sewing Machine Company as a salesman and as a store manager; and that the stores operated by Singer did not own the machines which were consigned to them by Singer. All of the machines were consigned to salesmen who worked on a commission basis.

It was stipulated that the State Tax Commission had never called upon or required appellee to pay the tax here in question. W. B. Moore, Chief of the Privilege Tax Division of the State Tax Commission, testified that he has been serving in that capacity for several years; that his division administers the tax in question; that the Singer Sewing Machine Company has been paying this tax for many years; but that, although his division has never handed down any written administrative ruling, its practical administration of Section 42 has been to apply this tax only to sewing machine agents and agencies, and not to an independent, retail merchant who, as an incident of his business, sells his own sewing machines.

We think that the terms of the statute itself and its history evidence a legislative intent to apply Section 42 to sewing machine agents and agencies only, and not to independent, retail merchants selling their own merchandise, as is appellee.

In the first place, the legislative history indicates an intent to apply this statute only to agents and agencies. It was first passed in Miss. Code of 1880, Section 585, p. 190, as a privilege tax "on each agency for sewing machines" and "on each agent for sewing machines of each company." With various modifications and changes in terminology, this tax on sewing machine agents and

agencies continued to be levied over the years. Hemingway's Miss. Code of 1927, Section 7747, levied the tax on each agency and agents for sewing machines, and then contained the following provision: "But this shall not apply to a merchant who buys sewing machines as other merchandise, and sells and delivers such machines at his place of business, but shall apply if the merchant is the agent of the sewing machine company, or sells machines on commission."

 In 1930 the state-wide tax was enacted in its present form, Miss. Laws 1930, Chapter 88, Section 175. Section 175 and subsequent reenactments of the statute have omitted the above quoted sentence which was in the Code of 1927, Section 7747. However, the omission of the quoted provision of the 1927 Code in the Laws of 1930 and subsequent reenactments does not have the effect of indicating a legislative intent to change the application of this particular statute. The quoted provision was surplusage, and its omission was part of a general revision of the privilege tax code for the purpose of achieving brevity and conciseness. If the Legislature had intended to change the meaning and application of the statute, unquestionably it would have changed the lead line or subtitle, and would have omitted the two references therein to "other agents." No intent to change the application of the tax can be inferred by the omission of provisions which are mere surplusage, particularly where the enacted statute, by its own terms, limits its application without the specific, omitted limiting clause. Moss Point Lumber Company v. Harrison County, 89 Miss. 448, 523-524, 42 So. 290, 299 (1906). The lead line of the statute still reads "sewing machine agents and agencies" and the statute still refers in two places to "other agents."

Before and since the year 1880, when this tax was first levied, there were a number of companies engaged in the manufacture and sale of sewing machines in the United States, by means of traveling agents with whom the

manufacturers had contracts. These manufacturers would follow the practice of establishing agencies and distributing points at various locations in the states, and the sewing machines manufactured by them were distributed to their traveling agents at those points. Such traveling agents were not independent merchants but were representatives acting on behalf of the manufacturers. In the absence of a privilege tax on sewing machine agents and agencies operating in this manner, such persons would escape state taxation, while local merchants, engaged in the general merchandising business and selling sewing machines as a part of their general stock were required to pay a disproportionate tax. Manifestly, the tax on sewing machine agents and agencies was enacted to cover that type of situation. This is evidenced by the history of the statute in question, and by the decisions with reference to it and similar legislation. See Mitchell v. City of Meridian, 67 Miss. 644, (1890); Hendon v. State, 61 Miss. 146 (1883); Singer Sewing Machine Company v. Brickell, 233 U. S. 304, 58 L. Ed. 974 (1913); Singer Mfg. Company v. Wright, 97 Ga. 114, 35 L. R. A. 497 (1895); Anno., 43 A. L. R. 595.

In addition to the legislative history, the precise terms of Section 42 show the manifest legislative intent to apply the statute only to "sewing machine agents and agencies." It is well-established that the headlines or lead lines in the state-wide privilege tax act constitute a part of the statute and are not ordinary titles. Gully v. Jackson International Company, 165 Miss. 103, 145 So. 905 (1933), specifically so held in limiting a privilege tax upon the business of selling tractors, by holding that the lead line "road machinery dealers" was intended to qualify what followed, and that the Legislature intended to apply the privilege tax only to the business of selling tractors and other machinery for road construction. To the same effect are Gully v. Gulfport Loan & Brokerage Company, 168 Miss. 449, 151 So. 721

(1934); Bailey v. Southern Bell Tel. & Tel. Company, 206 Miss. 723, 40 So. 2d 206 (1949).

▪▪▪ Hence the lead line of Section 42 is part of the statute. So when the succeeding clause refers to a privilege tax "upon each person engaged in the sale," etc., the definition of such person is necessarily qualified by the phrase "sewing machine agent and agencies." This is further qualified by the succeeding phrase "and employing *other* agents," which modifies both of the preceding alternatives. Nor could there be "*other* agents" without there precedently being an agent or agency. The phrase "other agents" is repeated again in the third paragraph of Section 42, levying a tax upon agents or such agency operators. Hence the terms of the statute itself impose it only upon sewing machine agents and agencies, and not upon merchants selling goods, wares and merchandise, and selling as an incident thereof sewing machines which they own as a part of their own inventory, such as appellee.

In Hall and Company v. Trapp, 155 Miss. 202, 124 So. 343 (1929), the local privilege tax was upon "each agency for the sale of a . . . frigidaire apparatus." The tax collector undertook to collect the tax from defendant who paid regularly a mercantile license for his business. Defendant paid cash for the frigidaires. In holding defendant not liable for the privilege tax "on each agency," it was said that he was simply selling his own merchandise, and that the transaction did not come within the definition of the word "agency." Mitchell v. City of Meridian, supra, and Hendon v. State, supra, contain interesting discussions of the application of the privilege tax to sewing machine agents and agencies.

Gully v. Goyer Company, 165 Miss. 279, 147 So. 327 (1933) was a suit by the State Tax Collector against the Goyer Company to collect a state-wide privilege tax as follows: "Sec. 121. Meat Distributing Plants. — Upon each person maintaining and operating a plant for the distribution and/or sale of meat and/or meat products to

retail dealers . . . five hundred dollars.'' Defendant was engaged in the wholesale mercantile business, and paid a wholesale store's privilege tax. As part of its general wholesale mercantile business, defendant sold perishable products including meat which it kept in a refrigerated compartment. The Court held that, since defendant's stock of meat must be included in the value of its stock of goods, wares and merchandise under the store privilege tax, it thought that the Legislature did not intend to impose an additional tax under Section 121. Defendant was a general wholesale merchant who simply stored and distributed meat as a part of its general business, upon which it paid the store privilege tax. See also Planters Lbr. Company v. Wells, 147 Miss. 279, 112 So. 9 (1927); Carney v. Hamilton, 89 Miss. 747, 42 So. 378 (1906).

▉▉▉ Appellant contends that appellee is claiming an exemption, and that a claim of exemption should be strictly construed. However, this case does not involve an exemption, but a question of whether appellee is subject to the tax. In 1952 the Attorney General rendered to appellant a written opinion that the privilege tax under Section 42 was applicable to all persons selling sewing machines. ▉▉▉ Although the construction placed upon a statute by the Attorney General is persuasive, it is not binding upon the Court, and clearly here was not correct.

▉▉▉ For over twenty years the State Tax Commission has construed Section 42 to apply only to agents or agencies selling sewing machines. The practical construction of a statute by an agency charged with its administration and enforcement is a persuasive factor in determining the meaning of the statute. ▉▉▉ The interpretative ruling of the Commission, even though oral in form, constituted a practical construction by those versed in the administration of taxing statutes which should be a consideration in its interpretation. Basical-

ly, however, we think that the legislative history and the terms of Section 42 render it not applicable to appellee's operations.

Affirmed.

*McGehee, C. J.,* and *Lee, Arrington* and *Gillespie, JJ.,* concur.