STATE EX REL COLLINS, ATTY. GENERAL *v.* GRENADA COTTON COMPRESS Co.

[55 South. 137. In Banc. No. 20976.]

1. LICENSES. *Statute imposes only one privilege tax on cotton compress company having several branches.*

   Under section 3798, Code of 1906, section 6501, Hemingway's Code, as amended by chapter 74, Laws of 1908, imposing privilege tax on each cotton compress company, only one state privilege tax is imposed upon a corporation engaged in the business of compressing, although the company owns branch plants or establishments in several counties other than that of its principal office or domicile.

2. STATUTES. *Statutes imposing duties or taxes are to be strictly construed.*

Laws imposing duties or taxes are not to be construed beyond the natural import of the language and are never to be construed as imposing burdens upon doubtful interpretation.

3. STATUTES. *Departmental interpretation cannot be resorted to where language is plain.*

The ultimate duty and responsibility of construction is upon the court, and departmental interpretation cannot well be resorted to where the language of the statute is plain but only where the language is doubtful, ambiguous, or uncertain.

APPEAL from chancery court, of Madison county.

HON. R. B. MAYES, Special Chancellor.

Bill by the state, on relation of Ross A. Collins, Attorney General, against the Grenada Cotton Compress Company. From a decree of dismissal relator appeals. Affirmed.

*J. N. Flowers, Ellis B. Cooper & H. S. Holden,* for appellant.

The decision of this case turns upon the interpretation and construction of section 3798, Code of 1906, section 6501, Hemingway's Code. Appellee maintains that under this statute it is not required to pay a privilege tax on each of its nine compress plants which it owns and operates at various towns and cities, and that if it pays one privilege tax to the state and one to the city of Grenada, it may own and operate any number of compress plants throughout the state. We respectfully submit that this interpretation and construction of the statute is erroneous; that the words "each compress company" mean each compress plant, and no other meaning was ever given to them until may, 1918, when appellee refused to pay privilege taxes on eight of its plants.

### CONSTRUCTION OF THE STATUTE.

It is the general rule in the United States that statutes imposing taxes are to be strictly construed against the state and in favor of the citizen. This rule, however, when rightly understood, does not compel a rigid adherence to the letter of the law or to strict grammatical construction so as to defeat the plain legislative intent, and in the federal circuit court of appeals it was held in *De Bary* v. *Souer,* 101 Fed. 425, that a statute imposing a license tax should be fairly and judicially construed as between both parties. (36 Cyc. 1190, citing cases.)

We take it, therefore, to be the law that statutes imposing taxes should be strictly construed against the taxing power except in cases where to do so would defeat the intention of the legislature and the object and purpose of the statute; or where such construction would result in injustice or absurdity, or contradiction of other statutes.

### INTENTION OF THE LEGISLATURE.

The object of all interpretation and construction of statutes is to ascertain and carry out the intention of the lawmakers, and when the intention is ascertained it must always govern. The intention of the legislature is always to be sought in the words of the statute where they are plain and unambiguous, but where they are doubtful or ambiguous, resort must be had to other facts and considerations.

It is one of the canons of the law of statutory construction that wherever the meaning is plain, the letter controls; wherever the meaning is in doubt, the spirit controls. A literal interpretation of a statute may lead to an absurdity or defeat entirely the intent of the framers. When this is the case, resort is had to the principle that the spirit of the law controls the letter, so that a

thing which is within the intention of the statute is as much within the statute as if it were within the letter; and a thing which is within the letter of a statute is not within the statute unless it be within the intention of the lawmakers.

CONTEMPORANEOUS CONDITIONS AT THE TIME OF ENACTMENT AND RE-ENACTMENT OF SECTION 3340, CODE 1892; SECTION 3798 CODE OF 1906.

This court may take judicial notice of historical facts and of facts as to the growth, progress, and development of science and industry, provided these facts are within the common knowledge of men living in the community or section of country where the history was made or the growth, progress, and development took place.

It is a fact commonly known to the people of this state and for other cotton-growing states in the South, that at the time this statute was originally enacted, namely in 1892, cotton compresses were all separate and individual plants, operating independently of each other. It was only in very recent years that corporations were formed to own and operate more than one compress plant or that one compress company owned and operated several compress plants. When the statute was framed and passed it was not contemplated that later in the future one compress company would operate more than one compress plant. The fact that there were no such companies doing this at that time is conclusively shown by the failure of the lawmakers in 1892 to provide for a privilege tax on each separate plant where several were owned and operated by one company. The statute enacted then reads the same as now, "on each compress company" and from the time of its enactment to the adoption of the Code of 1906, each compress plant (not each compress company) paid the privilege tax without protest.

In 1906, this statute was re-enacted. In 1908 it was amended slightly, but in neither case were the words "each compress company" changed, up to that time (1908) the great majority of compress companies owned and operated only a single plant. One or two perhaps owned and operated more than one plant. The legislators for this commonly known reason, did not, see fit to change the wording of the statute especially since even those compress companies who did own several plants had never, protested paying a privilege tax on each plant. When this re-enactment and amendment was made, it must have been the intention of the lawmakers that a tax should be paid by each compress plant. That must have been the idea they had. What other could they have had, in view of conditions in this industry at that time? Would they have framed the statute as they did if they had known conditions were diffierent? That most compress companies owned and operated not one plant, but several plants? Would they, as reasonable men and duly cognizant of their duties to the state as members of the legislature, have framed a statute which would enable certain businesses to evade the payment of just taxes? If compress companies at that time generally owned and operated several plants, instead of just one plant, would they not have known that fact and provided specifically for it.

When those three legislatures said "each compress company," they each and all meant "each compress plant" because at the time each one passed this statute, "compress company" and "compress" and "compress plant" were one and the same thing, and this court judicially knows that these three terms or titles meant one and the same thing in 1892, 1906, and 1908.

INTENTION AS SHOWN BY WORDS OF STATUTE.

Webster defines "company" as "a number of persons joined together for one purpose, or in one joint concern,"

and says further that the word may mean a firm, partnership or corporation. It is certainly true that "company" does not refer to one, single particular thing; it is an ambiguous term, and has been held by the courts to mean corporation, firm, partnership, joint stock concern, or association of persons.

The words "compress company" are to be interpreted with the presumption that they were used in the popular sense and have the popular meaning at the time they were placed in the law. As we have shown above, the popular meaning of "compress company" at the time this statute was enacted and re-enacted and amended, was a single compress or compress plant and this meaning prevailed until very recent years when it became known that compress companies were owing and operating several plants instead of just one.

Courts have held many times that where the word "corporation" was used in a statute, it meant and included also "person" and "persons" and other forms of buisness organization not designated technically as "corporations." Conversely, they have held many times that where the word "person" or "persons" was used in a statute, it meant and included "corporation." Many states, including Mississippi, have statutes providing that these terms are synonymous. In all of these decisions and in the statutes, it was the purpose of the courts and the legislature to carry into effect the intention of the legislature and the purpose and policy of the particular statute where such words were found.

In the instant case, we submit that the legislature in using the words "each compress company" intended that a tax should be paid by each compress plant or each compress, since such was the universally accepted meaning of the words at the time they were embodied in the statute.

"A statute must be construed with reference to the time of the passage thereof, or with reference to its going into effect, the meaning must be given to words which they had at the date of the act, and descriptive matter therein must refer to things as they existed at the time of its passage. 26 A. & E. Ency. Law, 611.

AIDS TO CONSTRUCTION.

This statute has been construed for over twenty-five years to mean that a tax was imposed on each compress plant. This construction, by the officials of the tax-collecting auditing, and attorney-general's Departments, until 1918 was accepted without protest by the compress companies.

Courts, in contruing or interpreting a statute, give much weight to the intepretation put upon it at the time of its enactment and since by those whose duty it has been to construe, execute, and apply it, particularly is this true where the statute is an old one and the construction that of contemporaries who had special knowledge of the subject. The contemporaneous and long-continued practice of officers required to execute or take special cognizance of a statute is strong evidence of its true meaning and should not be disregarded except for cogent reasons.

"On the principal of contemporaneous exposition, common usage and practice under the statute, or a course of conduct indicating a particular understanding of it, will frequently be of great value in determining its real meaning especially where such usage has been acquiesced in by all the parties concerned and, has extended over a long period of time. 36 Cyc., 1139, *et seq.*

CONSTRUCTION OF SIMILAR STATUTES IN OTHER STATES.

In Tennessee, as early as 1830, the highest court of that state held that where a party paid a privilege tax to retail goods, wares, and merchandise in Hardeman, county, this did not entitle him to operate more than one

store but that he must obtain a license for each store. *Crain* v. *State,* 2 Yerger, 390.

"Under the wording of the statute (Acts 1907, chapter 451, sec. 4), making the privilege tax apply to each ice depot from which ice is delivered, and under the principal of the decision in the case of *Crain* v. *State,* 2 Yer. 390, 393, there must be a license and tax paid for each of such ice depots, and two or more of such ice depots cannot be maintained under one tax, thus obviating the decision in the case of *Howe Ice Co.* v. *Shelton,* M. S. Opinion at Nashville, December Term, 1903, which was decided under Acts of 1901, chapter 128, sec. 4, pp. 200, 206, 212; Shannon's Annotated Constitution of Tennessee, page 316.

In *States* v. *Hunt,* 129 N. C. 686, 40 S. E. 216, it was held that a labor agent must pay a license at each seperate location where his buisness was conducted. In *State* v. *Morrison,* 126 N. C. 1123, 36 S. E. 329, the court held that where a license was issued to a corporation to sell pianos and organs, this one license did not protect all the agencies of the corporation throughout the state but only the agent to whom the license was intrusted and who had it in his possession.

Under a city ordinance providing that every person conducting a laundry should pay a license of one hundred dollars per year, one laundry operating three seperate laundries could not do so under one license but must pay a license for each of its laundries. *Commonwealth* v. *Pearl Laundry Co.,* 105 Ky. 249, 49 S. W. 26.

In *Conklin Lumber Co.* v. *City of Chicago,* 127 Ill. App. 103, the court held that the granting of a license to a lumber company to conduct a lumber yard at one place did not authorize it to conduct a lumber yard at other places under the same license. The defendant maintained that having a license to carry on the business of lumber dealer in the city he was not limited thereunder to one

place but might operate lumber yards at any number of places.

In *Porter* v. *State,* 59 Ala. 66, the court held that a statute imposing a license upon "dealers in pistols, bowie knives, and dirk knives" must be construed as applying to each dealer in pistols, or in bowie knives, or in dirk knives, and not merely to dealers in all of these articles.

One who conducts the same business at different places whether the business be wholesale or retail, is liable to a license tax on the business conducted in each place. *State* v. *Holmes,* 28 La. Ann. 765, 26 Am. Rep. 110; *Walters* v. *Duke,* 31 La. Ann. 668.

This rule applies where one of the places of business is a branch establishment, provided the business at the principal and branch establishment are operated separately. *Murrell* v. *Bokenfohr,* 108 La. 19, 32 So. 176.

Where a person conducts the same business at several different places, the general rule is that he must procure the required license or pay the required tax for each establishment. *Indianapolis* v. *Bieler,* 138 Ind 30.

The court will see by reference to the above cited cases, that similar statutes in other states have been construed by the courts to mean that a privilege tax must be paid on the particular business at each place where it is carried on. One company or corporation cannot pay one privilege tax for doing a certain business at one place and then own and operate the same business at any number of places without paying the tax at each place.

We call the court's attention especially to *Crain* v. *State, Commonwealth* v. *Pearl Laundry, State* v. *Holmes,* and *Walter* v. *Duke,* all cited above, which are almost exactly parallel cases.

*W. H. & Robert H. Powell,* for appellee.

To show that the legislature did not intend to tax each plant, establishment or press, but only each compress

company regardless of the number of plants, establishments or presses owned by this company or corporation as such, let us go back and examine the privilege tax laws of the state. By Laws 1874, page 37, each practising lawyer was taxed, ten dollars not each firm or company. Therefore each lawyer of a firm or company must pay ten dollars whether the firm is composed of one or nine. Subsequent laws are the same. If each plant, establishment or compress was intended to be taxed, the legislature would have so stated. When only a compress company is taxed, then only the company can be called on for the tax, regardless of the number of the plant. *"Expressio unis est exclusio alterius."* by Code 1880, sec. 585.

Each express company is taxed two thousand dollars, not each plant, establishment or office of an express company. Subsequent laws are the same. Each telegraph company operating more than three hundred miles of wire, two thousand dollars, subsequent laws are the same, not each office of a telegraph company. This tax is reduced according to the number of miles less than three hundred. So a compress company is reduced if the number of bales handled is under fifty thousand. So also by the same section each Life, Accident and Fire Insurance Company is taxed.

BUT, each agent is also taxed. Subsequent laws are the same. Not so in the case at bar with each plant or press or establishment. By the same section each store is taxed, not each company owning several stores. By Laws 1888, page 8, the same verbiage is used but the tax is increased.

Now, by section 3340, Code 1892, we find for the first time that cotton compress companies are taxed. It provides that "on each cotton compress company of twenty thousand bales capacity fifty dollars. On each cotton compress company of thirty thousand bales or more capacity one hundred and fifty dollars."

The verbiage of Laws 1908, page 64, sec. 8, is: "On each cotton compress company handling not over twenty thousand bales per year fifty dollars. On each cotton compress company handling over fifty thousand bales each year two hundred dollars."

The only difference in the Laws from 1892 to 1908 is an increase in the taxes and a change from capacity to amount handled. So we must conclude that the legislature, for over twenty years has recognized the fact that not each compress plant or establishment was taxed but only each compress company was taxed regardless of the number of the plants or places in which compresses were operated, when owned and operated by a company or corporation as one whole. By-laws of 1896, page 36: Cotton compress companies were taxed, not each plant or press. By-laws 1898, page 14;

The same verbiage was employed. By-laws 1908, page 64, sec. 8, *supra*. The legislature evidently took notice also of the ravages of boll weavil, when the word capacity was eliminated and the word handled was substituted. The capacity of the nine presses of defendant might be two hundred thousand bales, yet there was only eighty-seven thousand and eighty-one hundred handled during the year. Neither if the nine presses handled as much as twenty thousand, so if we are wrong in our construction of this section, we would only be liable for four hundred and fifty dollars to the state instead of nine hundred dollars as claimed and to the different cities for two hundred and twenty-five instead of four hundred and fifty dollars claimed by the bill, making a total of six hundred and seventy-five dollars. The defendant has paid three hundred dollars and if claimant recovers it would amount to three hundred and seventy-five dollars additional. Under our construction of this law we have already paid two hundred dollars to the state and one hundred dollars to the city of Grenada which is in lieu of

all taxes that can be claimed by the other cities in which we have presses.

BUT,we are not wrong in our construction. "Laws imposing privilege taxes are to be construed favorably to the citizens." *Vicksburg etc, R. R. Co.* v. *State,* 62 Miss. 105. Laws imposing privileges taxes, approximate an abridgment of the liberty of the citizens guaranteed to him by the fourteenth Amendment to the constitution of the United States and should receive the strictest construction. *Wilby* v. *State,* 93 Miss. 767, and other cases too numerous to cite.

When section 6501, *supra,* is thus construed it must mean that cotton compress companies as such, are taxed and not the several plants, establishments or presses. Again said section imposes an occupation tax upon each cotton compress company and not upon each plant, establishment or press. The *Zemurry case,* 87 Miss. 583, is decisive of the case at bar in our favor. By Laws 1904, page 79, section 93, there was imposed on each trading car, etc., a privilege tax. Although the law said each trading car was to be taxed, yet our court in case of *Simon Zemurry v. Bouldin, Tax Collector,* 87 Miss. on page 589, said: "It is clear that the privileges levied upon 'trading cars,' is on the occupation and not on a specific car."

. So we say in the case at bar that the privilege tax levied upon "cotton compress companies" is an occupation tax and not on a specific press, establishment or plant.

For further strict construction of privilege tax laws in favor of the citizens, see *Carney* v. *Hamilton,* 89 Miss. 747; *Hazelhurst Oil Mill Co.* v. *Decell,* 33 So. 412; *Senatobia Oil Mill* v. *Poag,* 86 Miss. 457; *Crenshaw Oil Mill* v. *Johnson,* 94 Miss. 773; *Harness* v. *Williams,* 64 Miss. 600.

To further demonstrate, that if the legislature had intended to tax each press, establishment or plant, instead of the compress company as such, and as an entity, it would have so stated, let us refer to Code 1906, Hemingway's sec. 6472: "On each architect charging for his services as such ten dollars. This shall be paid by any person supervising the erection of a building for an architect."

How particular and explicit, by section 6477, a privilege tax is levied on each place, hall or establishment where buildings are placed. By section 6481: 4. A privilege tax is levied on each place, hall or establishment where Ten pens are played, why was not each plant, establishment or press where cotton was compressed taxed, we answer, because the legislature did not intend to tax such, but only each compress company compressing cotton as to buisness or occupation.

By section 6512: Each express company is taxed, the court judicially knows that each express company has more than three hundred separate offices or places of buisness, yet only tax is required from the company, as such. By section 6514: On each feather renovator in each country where operated one hundred dollars if each press was intended to have been taxed, how easy it would have been for the legislature to employ such words by section 6515. "On each fertilizer company employing a capital of one thousand dollars or less, twenty-five dollars; if a fertilizer company has only one thousand dollars employed it can make fertilizer in every county in the state without paying any additional tax to the state." By section 6523: On each agent representing a surety company exclusively, for each county fifty dollars. If the defendant was required to pay but one tax, the law would have said on each surety and guaranty company one hundred dollars, yet they might have five hundred offices or places of buisness. It is the occupation that is taxed.

By section 6526: the tax on horse traders must be paid in each county. *"Lex ita scripta est."* By section 6549: Meat packing houses must pay the tax in each county.

So, we say that there can be no escape from the argument. If the legislature had intended to tax each press in each county, it would have written such intention in the law and its failure to do so necessarily means that it did not intend to tax any but the company as such at its domicile.

FINALLY, the court will observe by section 6501, that cotton compress companies are taxed, not cotton compresses or cotton presses, or establishments or plants. The unity or entity is taxed, not the constituent parts of the entity. The buisness or occupation of compressing, as a whole, is taxed. Not the several presses in each county.

"According to its ordinary occupation" company imports a body corporate rather than a mere partnership. *Broom* v. *Galena D. D. & M. Packet Co.*, 9 Minnesota, 239. Company and corporation, are commonly used as interchangable terms, *Goddard* v. *Chicago R. R.*, 202 Ill. 362.

STEVENS, J., delivered the opinion of the court.

The bill in this case filed by the state, on relation of the Attorney General, to recover from the Grenada Cotton Compress Company, a corporation chartered under the laws of this state, the sum of nine hundred dollars for the state and four hundred and fifty dollars for the several municipalities in which the defendant has branch compress plants. The bill avers that the defendant owns and operates nine compresses, the same being located in the municipalities of Canton, Abeerdeen, Winona Ackerman, Grenada, Holly Springs, Houston, Macon, and West Point, each one in a separate county; that the defendant is liable for a privilege tax to the state and to each muni-

cipality, but that the defendant maintains that its liability is limited to only one privilege tax to the state. It sets out the number of bales of cotton received at each compress and actually compressed from May 1, 1917, to May 1, 1918, and from this attempts to measure under the statute the amount of tax which the defendant is due.

This appears to be friendly litigation to elicit judicial construction of section 3798, Code of 1906, section 6501, Hemingway's Code, as amended by section 8, chapter 74, Laws of 1908. This section reads.

"Cotton Compress Company:

"On each compress company handling not over twenty thousand bales per year, fifty dollars.

"Same, on each compress company handling over twenty thousand and not over thirty thousand bales per year, one hundred dollars.

"Same, on each compress company handling over thirty thousand bales and not over fifty thousand bales per year, one hundred and fifty dollars.

"Same, on each compress company handling over fifty thousand bales each year, two hundred dollars."

An answer to the bill was filed, and the cause was submitted on bill, answer, testimony, and agreed statement of fact, and a decree rendered by the Honorable Robert B. Mayes as special chancellor, dismissing the bill, and from this decree the present appeal was prosecuted.

It is agreed that the Grenada Compress Company paid, before the institution of this suit, the sum of two hundred dollars to the state, and one-half that sum, or one hundred dollars, as privilege taxes to the municipality of Grenada; that the company was chartered prior to 1890, and has the authority to own and acquire the presses and establishments mentioned in the bill before the year 1908, and has operated them under one general management.

The main issue presented is one of law, to wit, the construction of that portion of the privilege tax statute im-

posing a privilege "on each compress company." It is the contention of the state that the tax is essentially upon the compress plant or establishment and must be measured alone by the number of bales handled at the particular plant from which the tax is demanded, or, in other words, that each compress plant is a separate unit for taxation under the statute. Counsel for appellee, on the contrary, contend that the tax is by statute expressly imposed on the company as such, and, there being but one company with its principal office and domicile at Grenada, there can be but one tax. It is asserted by counsel for the state that the statute has been construed for many years by the tax officials, auditor, and Attorney General as imposing a separate privilege tax on each compress plant, and that the contemporaneous construction by the departments of government should now govern.

We have given this cause very mature consideration and conclude that it must be affirmed. As we view it, the language of the statute is plain and unambiguous, and a reversal would require a judicial amendment of the statute itself. The tax is expressly imposed upon "each compress company." We are not justified in cutting out or eliminating the word "company," especially when we remember that a privilege tax is in the nature of a license to do business and not a property tax. It does appear that the legislature, in imposing various privileges, uses phraseology in some instances imposing the tax upon the business and in other instances upon the person or corporation, and little aid or comfort is gained by comparing the language now under review with the language employed in imposing other privileges. But if we are justified in ignoring the word "company" in the present case, we would be equally justified in eliminating the word "company" from the statute imposing a privilege tax on each "express company" in this state or each "telegraph company" and proceed to assess

privileges for the state upon each express office or telegraph office in the state. The statute is not so written, and the plain words of the statute must in this instance be our sole guide. It is true that the long construction placed upon the statute by the appropriate departments of government is persuasive and should have our sympathetic regard.

Nevertheless, as stated in *Ex parte Taylor,* 58 Miss. 482, 38 Am. Rep. 336:

"The rule is well settled that laws imposing duties or taxes are not to be construed beyond the natural import of the language, and are never to be construed as imposing burdens upon citizens upon doubtful interpretation."

And again in *Railway Co.* v. *Clark,* 95 Miss. 689, 49 So. 177:

"Laws imposing privilege taxes are to be liberally construed in favor of the citizen, and courts will not extend the statute imposing such taxes beyond the clear meaning of the language employed."

The ultimate duty and responsibility of construction is upon the court, and departmental interpretation cannot well be resorted to where the language of the statute is plain. Before we are justified in accepting departmental construction the law under consideration must be doubtful, ambiguous, or uncertain. *Lawrence University* v. *Outagamie County,* 150 Wis. 252, 136 N. W. 619, 2 A. L. R. 465; *Milwaukee County* v. *Isenring,* 109 Wis. 9, 85 N. W. 131, 53 L. R. A. 635; *County of Lake* v. *Westerfield,* 273 Ill. 130, 112 N. E. 308, Ann. Cas. 1918E. 102; *State* v. *Mutual Life Ins. Co.,* 175 Ind. 59, 93 N. E. 213, 42 L. R. A. (N. S.) 256.

No relief can be given the municipalities involved for the reason that the pleadings and proof do not affirmatively show the passage of the necessary ordinances imposing the tax. There is another possible reason. In answer to questions propounded by the court as to the right of the Attorney General to sue for the municipali-

ties, no authority so to do has been shown. It is unnecessary, we think, to enter into a discussion of the Attorney General's powers, and an affirmance of this cause can well be rested upon other grounds. This opinion and the decree rendered in this cause should not be construed as an adjudication of the rights of the municipalities to demand or recover from appellee any lawful taxes. The bill as to such municipalities should be dismissed without prejudice.

We are advised that the statute under review has been amended by the legislature of 1920, and the questions presented by this appeal are thereby rendered of less importance.

Affirmed.