TOWN OF UTICA *v.* STATE *ex rel.* RICE, ATTY. GEN.

(Division A.  May 15, 1933.  Suggestion of Error Overruled June 12, 1933.)

[148 So. 635.  No. 30661.]

W. E. Morse, of Jackson, for appellant.

Gardner & Backstrom, of Gulfport, and J. Morgan Stevens, of Jackson, amici curiae.

Herbert Nunnery, Special Agent, for the state.

571

Argued orally by **W. E. Morse**, for appellant, and **Herbert Nunnery**, for the state.

**McGowen, J.**, delivered the opinion of the court.

The attorney-general demurred to each of these pleas, filed a declaration against the town of Utica, a municipal corporation of the state, seeking to recover one cent a gallon tax on sixteen thousand two hundred thirty-nine gallons of fuel oil on which it was alleged that the tax, as imposed by section 6 of chapter 93, Laws of 1932, had not been paid. It was further alleged that the town of Utica purchased said fuel oil and was therefore indebted to the state of Mississippi for an excise tax of one cent per gallon, together with the penalty. The amount demanded was two hundred two dollars and thirty-nine cents, penalty and interest.

To this declaration the municipality of Utica filed special pleas alleging that it had bought fuel oil with a specific gravity of thirty-two and thirty-six hundredths for municipal purposes, to be used, some of which had been used, was being used, and was to be used, for burning in a stationary engine in order to generate electricity and pump water for the inhabitants of the municipality; that it sold none of the product, used none on the streets, roads, or highways anywhere in the state; that it used none as motor vehicle fuel, and that it was not manufactured, refined, or blended in the state; that the municipality was not engaged in business as a distributor or wholesale dealer of said oil; and that its oil was not subject to any tax by virtue of chapter 93. Another plea was to the effect that the oil was brought from parties outside of the state, delivered to it at Utica, and consumed for the purposes stated heretofore; that none was sold or used as motor vehicle fuel, nor blended, nor disposed of for the purpose of being blended. Another plea

was to the effect that the tax, as levied by the act, was a property tax and therefore void.

The attorney-general demurred to each of these pleas, and the court below sustained the demurrers, therefore the case is properly here on appeal.

In so far as chapter 93 of the Laws of 1932 imposes an excise tax upon that product which the act defines as gasoline, there is no trouble, but the question presented to us for decision is, Does chapter 93 levy a tax upon fuel oil, upon which the tax has not theretofore been paid, used by a municipality for its own purposes and not on the streets or highways of the state, and not sold or blended? As to the products upon which a tax is sought to be levied, other than gasoline, chapter 93 is most indefinite, very uncertain, and extremely hard to harmonize in all its parts when the entire scheme of taxation is considered together.

Tax laws are to be strictly construed against the taxing power. This power cannot be implied, and all doubts must be resolved in favor of the taxpayer. See State v. Grenada Cotton Compress Company, 123 Miss. 191, 85 So. 137; Miller v. Illinois Central R. R. Co., 146 Miss. 422, 111 So. 558; Board of Levee Commissioners v. Howze Mercantile Co., 149 Miss. 843, 116 So. 92.

For about a decade it has been the custom of the Legislature to levy an excise tax on gasoline to be used mainly for the purpose of maintaining the public highways of the state. In 1932 the Legislature for the first time sought to include in the law imposing an excise tax on gasoline an excise tax to some extent on kerosene and other kindred substances having a lesser degree of specific gravity than gasoline. The distinction between gasoline and the other products is found in said chapter 93, section 1, amending section 4785 of the Code, in which all liquid fuels used or usable in propelling motor vehicles, etc., which had a gravity test in excess of forty-six degrees Tagliaubes Baume scale, at a temperature

of sixty degrees F., were classed as gasoline. Under section 6 of the same chapter an excise tax was levied upon all such products received in the state for sale, use on the public highways, or storage, or for any commercial purposes whatever.

There is no contention in this case by the attorney-general that the products sought to be taxed here were defined by the Legislature as gasoline; so then it becomes necessary to ascertain from the act under what conditions the tax on the products with less specific gravity than gasoline was imposed.

We set forth in this opinion the applicable sections of said act necessary to be before the eye in order to construe the act. They are as follows:

"4785. *Definitions.*—(a) That the word 'gasoline' as used in this act, and in chapter 116, Mississippi Code of 1930, and amendments thereto, shall include all liquid fuels other than crude oil, which is used or usable in propelling motor vehicles, either when used alone or when mixed, blended, or compounded, including liquids ordinarily, practically and commercially usable in internal combustion engines for the generation of power, and all distillates of, and condensates from petroleum, natural gas, coal, coaltar, vegetable ferments, and other products, so usable and received in this state, except kerosene, fuel oil and crude oil as such; provided that said kerosene, and fuel oil as such, shall not have a gravity test about 46° Tagliaubes Baume scale, at a temperature of 60 degrees F.

"(b) When used in this act, the term 'person' includes any individual, firm, co-partnership, joint adventure, association, corporation, estate, trust, or any other group or combination acting as a unit, and the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context.

"(c) Every person, who shall engage in the business of selling or distributing gasoline for re-sale at retail or

otherwise, shall be deemed a distributor or wholesale dealer, and every person purchasing or acquiring in any manner for use on streets, roads or highways, sale or distribution, by retail or otherwise, from any source other than from a distributor or wholesale dealer of gasoline, duly licensed as such in this state, and every person renting or furnishing storage tanks, storage facilities and/or delivery equipment for the storing, handling and/or delivering of gasoline for sale, distribution or use, to persons other than distributors or wholesale dealers or retail dealers as herein defined, and every person purchasing or acquiring in any manner any gasoline for use in internal combustion engines or for any commercial purpose whatever, shall be deemed a distributor of gasoline and subject to all the provisions of law pertaining to distributors, or wholesale dealers of gasoline.

"(d) The term 'retail dealer' includes persons other than wholesaler or distributor engaged in the sale and/or distribution of gasoline from any place in this state and delivered to the purchaser or user thereof, in broken quantities.

"Section 2. For the purpose of this act it will be prima facie presumed that all motor vehicle fuel as defined herein, manufactured and/or refined, blended or compounded in this state or brought into this state (for consumption, storage or sale) is intended for use in propelling motor vehicles on the public roads and highways, and the tax liability in this act is based on such presumption. It is the further purpose of this act to provide for the refunding to the consumer of all tax actually paid, less one cent per gallon, on motor fuel not used in propelling motor vehicles on the public highways and roads. All motor fuel entering the state of Mississippi shall be used in computing the tax, except motor fuel brought into the state in the reservoir provided by the manufacturer as

the container for motor fuel used in propelling said motor vehicle, not to exceed twenty (20) gallons.

"No section or portion of this Act shall be construed to impose any tax on gasoline which is used exclusively in aircraft by operators of commercial aircraft engaged in the transportation of United States mails under contract with the Government of the United States. . . .

"Sec. 6. That section 4789 of the Mississippi Code of 1930, as amended by section 13, chapter 21, Laws Extra Session 1931, be and the same is hereby amended to read as follows:

"4789. *Excise Tax on Gasoline and Other Petroleum Products.*—Any person engaged in the business of a distributor or wholesale dealer in gasoline shall pay for the privilege of engaging in such business an excise tax equal to and computed as follows:

"(a) Six (6) cents per gallon upon all gasoline received in this state for sale, use on the highways, or storage and/or distribution, use in internal combustion engines or for any commercial purposes whatever.

"(b) One (1) cent per gallon upon all kerosene, fuel oil, and distillate, having a gravity of 46° Tagliaubes Baume scale, or below, on a basis of sixty degrees temperature F., provided however, that if any dealer or person subject to the provisions of this law shall sell any such kerosene, fuel oil or distillate oil knowing that the same is to be used, or is intended to be used, or compounded, mixed or blended, for motor vehicle purposes, the said kerosene, fuel oil, or distillate oil, shall be subject to the same tax as gasoline. .

"On the day this act becomes effective, every distributor or wholesale dealer in gasoline shall take an inventory of the stocks of gasoline on hand, and shall report same to the state auditor on or before the fifteenth day of that month, and shall pay an excise tax of six (6) cents on each gallon of such gasoline on hand, taking credit

for the five and one-half cents tax heretofore levied, provided same has heretofore been paid.

"Any person engaging in the business of a retail dealer of gasoline, and/or kerosene, fuel oil and distillate, shall pay for the privilege of engaging in said business the same and a like privilege tax as required of the distributor if, as, and when the said retail dealer sells, distributes and/or deals in gasoline, and/or kerosene, fuel oil and distillate on which the said above excise tax has not been paid. Such tax shall be paid by the retail dealer. when the said retail dealer obtains a permit from the state auditor showing that the dealer is to obtain the gasoline to be sold, distributed and/or dealt in by said retail dealer from sources..of 'dealer's option'; unless the excise tax has been paid by a distributor.

"(c) Any person who shall bring into this state any motor fuel shall be deemed to be a distributor of gasoline and shall pay the tax required, unless same shall otherwise be paid or covered by bond, except as provided in section 2.''

Referring now to section 6 of the act, it will be observed that the tax levied is required to be paid by the person engaged in the *business* of distributor or wholesale dealer in gasoline, and by paragraph (b) thereof the amount of the tax is one cent per gallon. No reference is made therein to storage or to use on the highways. The language "shall sell any such kerosene," etc., clearly indicates that the tax is upon the product when in the possession of a person within the purview of the act who has it on hand for sale, while as to gasoline it is equally clear that a tax is levied upon the storage of that product within the state for any commercial purpose.

Paragraph (c) of the first section (4785) is clearly not to be brought forward and read in connection with paragraph (b) of section 6. So that it is fairly clear that it was not the intention of the Legislature to levy a tax upon kerosene or kindred products; but paragraph (c)

refers only to gasoline and those products described in the first definition as gasoline and its kindred products. It seems plain that the only reasonable construction that we could place on the act is that the excise gallonage tax on kerosene, etc., is merely levied on that product in the hands of persons who are engaged in the business of selling or distributing kerosene, etc. In other words, there is a tax levied under this act upon the storage of gasoline in this state, but there is no tax levied on the storage of kerosene, etc., in this state.

It will be observed that in section 2 the same product is differently named, called "motor vehicle fuel" and further called "motor fuel," but both have reference to gasoline or that which is defined in the first definition as being above forty-six degrees in gravity. It clearly appears from the plea which is admitted to be true by the demurrer that the town of Utica was not engaged in the business of distributor or wholesale dealer in gasoline, and the tax is not levied on storage of kerosene as in the case of gasoline; therefore, it was not the intention of the Legislature that the word "storage" should be read into paragraph (b). Unless it is so read there is no amount due from the municipality as a tax on the product which it consumed or intended to consume in the operation of its plant in no way connected with the public highway. With this view appearing to us to be the most satisfactory explanation of the entire act, it is unnecessary for us to consider the case of Gregg Dyeing Co. v. Query, 286 U. S. 472, 52 S. Ct. 631, 76 L. Ed. 1232, in which the United States Supreme Court held that there was no direct burden imposed on interstate commerce, nor constitutional discrimination against transactions in interstate commerce, where gallonage excise tax was levied on gasoline stored within the state. The same observation may be made of the cases of Nashville, Chattanooga & St. Louis Ry. Co. v. Wallace, 53 S. Ct. 345, 77 L. Ed. —, and Edelman v. Boeing Air Transport,

Inc., 53 S. Ct. 591, 77 L. Ed. —. These several opinions shed no light on and render no assistance on the construction of the act before us.

We conclude that the town of Utica, on the facts of its plea admitted by the demurrer, was not liable, because the Legislature had not imposed a tax upon its property herein described.

Reversed and remanded.

## On Suggestion of Error.

**Cook, J.,** delivered the opinion of the court on suggestion of error.

On a former day of this term the judgment of the court below in this cause was reversed, and the cause was remanded to the circuit court for trial de novo. The appellant now suggests that upon reversal of the judgment of the circuit court a final judgment in its favor should have been entered in this court. This exact point was recently decided adversely to appellant's contention in the case of McIntosh v. Munson, Road Machinery Co. (Miss.), 145 So. 731; and consequently the suggestion of error, or motion to correct the judgment as it is erroneously styled, must be overruled.

Overruled.