BAILEY, STATE TAX COLLECTOR, *v.* SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY

In Banc. May 23, 1949.

(40 So. (2d) 606)

Russell Wright, for appellant.

**Butler & Snow,** for appellee.

**McGehee, C. J.**

This suit was originally brought by the predecessor in office of the appellant, State Tax Collector, to recover of the appellee, Southern Bell Telephone & Telegraph Company, the sum of $12,300 alleged to be due in privilege

taxes and penalties for the privilege of conducting a commercial advertising agency in each of the eighty-two counties of the State for the period from January 1, 1941, through June 30, 1944. The case was heard on its merits, and a final decree rendered dismissing the suit, and from which decree this appeal was taken.

The basis of the claim of the State Tax Collector is that by the publication and distribution of telephone directories carrying certain advertising matter for the business subscribers of the telephone company, the appellee was engaged during the aforesaid period in the business of conducting a commercial advertising agency within the meaning of Chapter 120, Laws of 1940, Section 9432, Code of 1942, which reads in full as follows:

"Advertising agency—commercial.—Upon each person, other than a licensed newspaper or printer, engaged in the business of commercial advertising, preparing commercial advertisements, or negotiating and making advertising contracts for profit, a state tax . . . $25.00."

Other privilege taxes are levied by the next succeeding sections of the said Code, Sections 9433-34-35 on "Advertising, commercial outdoor"; "Advertising, motion pictures"; "Advertising, street cars, taxicabs, buses or trucks"; respectively.

It is contended by the State Tax Collector under Section 9432 that the telephone company is liable for the taxes sued for herein, for carrying advertisements in its telephone directory, for the reason that the company is not a licensed newspaper or printer; that the maxim expressio unius est exclusio alterius applies.

However, the first question to be determined is whether or not the telephone company, when carrying advertisements in its telephone directory, is an advertising agency within the meaning of the statute here involved, when the head or the lead line of the statute is considered as a part thereof.

The facts of the case were either agreed upon and stipulated or established by undisputed evidence. The

record discloses that the telephone company carries no advertising matter in its directories for anyone other than a subscriber for a business telephone, and that the directories are delivered only to the subscribers for personal and business telephones. That no prices are permitted to be quoted therein. The advertising is classified, and they feature the telephone number and address of the advertiser in order to facilitate telephone service. It is stipulated in the record that the alphabetical directory "is absolutely necessary to enable said company to render efficient and satisfactory telephone service." They refresh the memory of the telephone users as to the name of the business concern which they may have momentarily forgotten, and they enable such users to obtain a particular service or commodity where they may not otherwise know which individual or firm to telephone.

It is shown that there are more than thirty-seven hundred employees of the telephone company in this State, and that only eight of them were engaged in connection with the work of the advertising which is carried in the telephone directory. In other words, the advertising is merely incidental to the main business in which the company was engaged.

If the maxim, expressio unius est exclusio alterius, which is a mere aid to construction and not a rule of law, should be deemed controlling here in the construction of Section 9432, Code of 1942, hereinbefore fully quoted, then there would have been no purpose to be served by the enactment of Sections 9433-34-35, hereinbefore mentioned. Moreover, restaurants, hotels and other places of business posting advertisements for profit would come within the meaning of the term "Advertising agency-commercial."

It is shown that the Cumberland Telephone and Telegraph Company which operated in Kentucky, Tennessee, Mississippi and Louisiana, prior to the time when it was purchased by the appellee, had carried advertising matter for profit in its telephone directories, and that the

appellee had likewise done so in this State from June 30, 1926, after purchasing the Cumberland Telephone System, and this fact was necessarily known to the Legislature when the first statute that imposed a privilege tax on commercial advertising agencies in this State, Section 6, Chapter 89, Laws of 1932, was enacted. Such fact was likewise known to the Legislature when it enacted Chapter 120 of the Laws of 1940, Sections 9432-35 inclusive, Code of 1942, levying privilege taxes upon advertising agencies, commercial outdoor advertising, motion picture advertising, and advertising in street cars, taxicabs, buses or trucks.

These head or lead lines to the statutes above mentioned were held in the case of Gulley v. Jackson International Company, 165 Miss. 103 145 So. 905, 906, by a direct analogy, to be a part of what immediately follows in each section of the privilege tax code. In that case the statute involved was Section 171 of Chapter 88, Laws of 1930, imposing a tax on "Road Machinery Dealers", and there followed as the body of the statute the words "Upon each person engaged in the business of selling tractors and/or road machinery, a state wide tax of . . . $200." And the Court, in holding that dealers in farm tractors were not included, said: "Appellant's contention is that the body of the statute needs no interpretation; that it is plain and unambiguous, and imposes the license upon each person engaged in the business of selling tractors, regardless of the kind or character of tractors and the use for which they are intended; while appellee contends that the statute is ambiguous, and therefore, in order to ascertain its meaning, resort must be had to its head lines or caption.'Road Machinery Dealers.' We are of the opinion that appellee's contention is well founded."

And the court further said: "The Legislature, in the enactment of the privilege tax statute, undertook to comply with the Constitution by adopting a title in general terms preceding the enacting clause, followed, at the beginning of each section, by subtitles which are more in

the nature of lead lines than titles. ██ ██ We think it apparent that these lead lines constitute a part of the statute; they are not ordinary titles. Without them some of the sections of the act would be incomplete and uncertain in meaning. The words 'Road Machinery Dealers' were intended by the Legislature to qualify what followed. In other words, the Legislature intended to impose a privilege tax alone on the business of selling tractors and other machinery used for road construction or maintenance.''

We are of the opinion that the cases of Gully v. Jackson International Campany, supra, and Gully v. Gulfport Loan and Brokerage Company, 168 Miss. 449, 151 So. 721, are controlling here in favor of the appellee. Moreover, ██ ██ it is well-settled that laws imposing privilege taxes are liberally construed in favor of the person sought to be charged with such taxes and are strictly construed against the taxing powers. Planters' Lumber Company v. Wells, 147 Miss. 279, 112 So. 9; Pan American Petroleum Corporation v. Miller, 154 Miss. 565, 122 So. 393; Town of Utica v. State ex rel., 166 Miss. 565, 148 So. 635; Stone v. Rogers, 186 Miss. 53, 189 So. 810; and other decisions too numerous for citation here.

Examples of advertising agencies are such well-known advertisers as ''Hurt Advertising Agency; Marks & Neese Advertising, Inc.; or Dixie Advertisers,''—concerns which were known at the time of the enactment of the statute in question to be engaged in the commercial advertising business. And Mr. W. L. Cooper, Production Manager of the Dixie Advertisers, an advertising agency located in the City of Jackson, Mississippi, testified as to the nature and functions of commercial advertising agencies, and said in substance that an advertising agency is an organization with a staff created for the placing of advertising for clients, and receives a standard agency commission of fifteen percent from advertising media in which it places the advertising matter of its clients. He testified, and it is undisputed by other testimony,

that the activities of the appellee telephone company in accepting advertising material from its subscribers and publishing that material in its directory for an agreed rate does not engage in the operation of an advertising agency within the usual and customary meaning of that term. It acted as a principal.

The telephone company has paid all privilege taxes imposed upon it by law for the privilege of carrying on and conducting its telephone business, and all other taxes required by law in connection therewith. The funds received for carrying advertising matter in its telephone directory have been reported to the Federal Communications Commission and the State Public Service Commission as ''operating revenues and expenses'', and as part of the gross receipts from its telephone business in this State. The company has never heretofore been called upon by the taxing authorities to pay privilege taxes as an advertising agency.

At any rate, ▮▮ we are of the opinion that the Legislature has specified in Sections 9433-34-35 the character of advertising upon which it desired to levy a privilege tax, other than the advertising conducted by a commercial advertising agency, and we do not think that the classified advertising carried in telephone directories of the appellee, as an aid to the efficiency of the telephone service and as an incident to the business in which it is mainly engaged, is such as to constitute a telephone company an advertising agency within the meaning of Section 9432 of the Code of 1942, here under consideration. The judgment of the trial court will therefore be affirmed.

Affirmed.