## DISTRICT OF COLUMBIA v. CHESAPEAKE & POTOMAC TELEPHONE CO.

Nos. 10262, 10263.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 9, 1949.

Decided Jan. 30, 1950.

Mr. George C. Updegraff, Washington, D. C., Assistant Corporation Counsel, with whom Messrs. Vernon E. West, Corporation Counsel, and Chester H. Gray, Principal Assistant Corporation Counsel, Washington, D. C., were on the brief, for the District of Columbia.

Mr. H. H. Walker Lewis, Washington, D. C., for The Chesapeake and Potomac Telephone Company.

Before CLARK, PRETTYMAN and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

The District of Columbia levied a tax for the fiscal year 1949 on gross receipts from the following sales made by the Chesapeake and Potomac Telephone Company:[1] (1) sale of advertising space and black-letter listings in its classified directory; (2) sale of its street-address directories; (3) sale of directories to telephone companies outside the District of Columbia; and (4) sale of directory covers. Upon review by the Board of Tax Appeals, it was held that although the District might validly reach items 2, 3 and 4, item 1—advertising receipts—was not a public utility service or commodity and therefore not taxable. Both parties appeal from the Board's order, pursuant to 47 D.C.Code, §§ 2403, 2404 (1940), the District challenging its ruling with regard to item 1, the Telephone Company with regard to items 2, 3 and 4. The statute under which the District acted is 47 D.C.Code, § 1701 (1940) which reads:

"Each national bank * * * and all other incorporated banks and trust companies * * * and all gas, electric lighting, and telephone companies * * * shall make affidavit * * * as to the amount of its or their gross earnings or gross receipts, as the case may be, for the preceding year * * * and [each] telephone company shall pay to the collector of taxes of the District of Columbia per annum 4 per centum on such *gross receipts, from the sale of public utility commodities and services within the District of Columbia.*" (Emphasis supplied.)

#### (1) *Sale of directory advertising*

Resolution of the tax question here involved hinges on a determination of whether the statutory phrase "public utility commodities and services" embraces the sale of advertising space in the Company's classified directory.[2] The Board of Tax Appeals found that it did not, reasoning that "advertising was not essential to the operation or use of petitioner's telephone system. While closely associated therewith, it was not a part of its public-utility services any more than the sale of peanuts, popcorn, chewing gum and candy at a baseball game, although often concomitant therewith, is a part of the playing or viewing of the games."[3] We do not think that the essentiality of the service is determinative of the issue.

The distinguishing mark of a public utility is its publicly-fostered insulation from competitive pressures.[4] Since exaction of some compensation to the public in return for this monopoly grant is the avowed objective of a utilities franchise tax,[5] it is especially fitting that taxability be keyed

1. For convenience, the District of Columbia will hereafter be referred to as the "District" and the Chesapeake and Potomac Telephone Company as the "Company."

2. According to the record, each business subscriber is entitled to one light-print listing in the classified directory, without extra charge. Any other space, i. e., additional listings, black-letter listings or display advertisements, is paid for separately. It is these advertising revenues which are the subject of this part of the suit.

3. For support of the Board's position in a somewhat different context, i. e., motion for injunction *pendente lite* to restrain a telephone company from refusing acceptance of plaintiff's advertisements, see Abco Moving & Storage Corp. v. New York Telephone Co., Sup.Ct.1948, 193 Misc. 96, 83 N.Y.S.2d 448, affirmed 1948, 274 App.Div. 779, 81 N.Y.S.2d 146.

4. "In practice, industries supplying essential services which would suffer if left to unregulated competition have been granted monopolistic privileges or hold special franchises under which they are protected from competition but are regulated as to earnings and rates and supervised as to operations." H.R.Doc.No. 108, District of Columbia Tax Study, 76th Cong., 1st Sess., p. 79 (1939). This report recommended the adoption of the tax as it is now constituted. See id. at p. 97.

5. "* * * public utilities operating in the District of Columbia enjoy a special franchise, or its equivalent, in the form of a monopolistic privilege for the fur-

to "special benefit" as determined by "preferred competitive position." It would seem that wherever a utility company, because of public grant, is placed in a preferred position with regard to the sale of a particular service or commodity, then such services or commodities deserve the qualifying label "public utility." Similar reasoning was used by a California court when it held the form, contents and rates of classified directories, including advertising, subject to the jurisdiction of its regulatory commission. California Fireproof Storage Co. v. Brundige, 1926, 199 Cal. 185, 248 P. 669, 47 A.L.R. 811.

The Company argues that it enjoys no monopoly with regard to advertising sales but competes with other advertising media, such as newspapers and radio. That is like saying that the Telephone Company is not a monopoly because it must compete with the telegraph and the post office for the communications' portion of the consumer dollar. Although we recognize that the availability of substitutes is a factor to be considered in determining monopoly status, it seems clear to us that, in the particular field of directory advertising, the Company enjoys an overwhelmingly dominant position by virtue of its special franchise. It alone is able to compile and keep up-to-date a directory of telephone numbers. Without such a compilation as a focal point, advertisers would hardly be attracted to the same extent. In addition, only the Telephone Company can so easily assure advertisements of an entry into every home and public place which boasts a telephone. It may well be true that the Telephone Company need not sell advertising, but, at the same time, it recognizes that its economic self-interest is well served by doing so. Once having embarked upon such a course, it must assume the obligations which attend the benefits.

We are, of course, aware that if an activity were "purely private" in nature, it would be outside the reach of this particular taxing statute. See Chesapeake & Potomac Telephone Co. v. Manning, 1902, 186 U.S. 238, 247, 22 S.Ct. 881, 46 L.Ed. 1144. Without at present detailing what such "private" activities might be, we deem it sufficient to say that they do *not* include such activities as carry with them the "preferred position" flowing from the public grant.

That receipts for directory advertising are not "purely private" is also indicated by their treatment for accounting purposes. Under the Federal Communications Commission's Uniform Classification of Accounts, adopted by the D. C. Public Utilities Commission by Order No. 1592, dated April 1, 1937, such receipts are included in the operating revenue account. 47 Code Fed.Regs. § 31.523 (1938).[6] That account is used as the basis for calculating permissible rates for telephone service. See, e. g., Public Utilities Commission, Order No. 3295, pp. 2 et seq., December 22, 1947. As said in San Francisco-Oakland Terminal Rys. v. Johnson, 1930, 210 Cal. 138, 291 P. 197, 204: "We understand that [the receipts from restaurants and commissaries operated aboard publicly-regulated ferryboats] are * * * treated [as operative receipts] by the Railroad Commission in proceedings before that body for the purpose of fixing the fares of plaintiff for its passenger service. It is difficult to conceive how they can be operative receipts for one purpose and nonoperative for [tax purposes]."

It is apparent from what we have already said that we find no merit in the Company's reliance on prior administrative construction of this statute. The Board is reversed as to item (1).

---

nishing of public utility goods and services. This carries with it an opportunity for stable earnings not found in ordinary business and for which a government may justly levy a special tax." H.R.Doc.No.108, supra, note 4, at p. 97.

6. See Baldwin v. Chesapeake and Potomac Telephone Co., P. U. R. (Md.) 1928 E,

529, 531; Bailey v. Southern Bell Telephone & Telegraph Co., 1949, 206 Miss. 723, 40 So.2d 606, 608. It is settled that we may take judicial notice of the existence of such regulations. See N.L.R.B. v. Atkins & Co., 1947, 331 U.S. 398, 406 n. 2, 67 S.Ct. 1265, 91 L.Ed. 1563; United States v. Bradford, 2 Cir., 1947, 160 F.2d 729, 731.

### (2) *Sale of street-address directories*

■ These directories were published principally for the use of petitioner's information operators, as an adjunct to the alphabetical directories. We agree with the Board of Tax Appeals that the street-address directories were taxable as "public utility commodities." Their sale to sales organizations of business houses was, in the Board's words, "as much a part of the telephone service of persons desiring to use petitioner's telephone for calling certain addresses, as distinguished from certain persons, as were the alphabetical directories. The fact that they were paid for instead of being delivered free, does not change their nature."[7]

### (3) *Sale of directories to out-of-District telephone companies*

The Company sold directories to telephone companies in other cities, and, in turn, purchased copies of their directories from such companies. These transactions were handled in clearing-house fashion, a central price list being maintained with a price allocated to each city's directory. At the end of a designated period, the requisite debits and credits were made and the ultimate liability of each company determined. It is contended by the Company that since orders for these directories emanate from outside the District and are usually filled by the Company's printer in New Jersey, such sales do not take place "within the District of Columbia," as re- quired by the tax statute, 47 D.C.Code § 1701 (1940).

■ Whether the sale has taken place in the District depends upon where "title" in the directories passed.[8] That elusive legal concept is largely a question of intention. The Uniform Sales Act, which is part of the District of Columbia Code, supplies certain rules to aid in ascertainment of such intention, 28 D.C.Code § 1203 (1940), but such rules should be bottomed on facts, so long as facts are obtainable. The record before us does not contain enough facts from which to determine the question of when and where title in the directories passed. Nor did the Board make any specific finding on that question. As a result, we find it necessary to remand this part of the case to the Board for findings with regard to whether *all* or *part* of these sales took place "within the District of Columbia," and, if only part, for any apportionment which may be necessary. We do not disturb that part of the Board's Conclusions of Law holding the sales here involved the sale of "public utility commodities and services."

### (4) *Sale of directory covers*

■ We do not disturb the Board's disposition of this item.

The decision of the Board of Tax Appeals is reversed as to items 1 and 3, affirmed as to items 2 and 4, and the case is remanded for further proceedings with respect to item 3.

Affirmed in part, and reversed in part.

7. Cf. Chesapeake & Potomac Telephone Co. v. District of Columbia, 1943, 78 U.S.App.D.C. 53, 137 F.2d 674, which held the alphabetical directory a "commodity" within the tax on gross earnings which preceded the present tax on gross receipts.

8. Cf. Electric Storage Battery Co. v. District of Columbia, 1946, 81 U.S.App. D.C. 135, 137, 155 F.2d 867, 868–9, which dealt with the question of where title passed in order to determine whether a particular sale gave rise to "gross income from sources within the District of Columbia." For similar treatment of the provision of the Federal income tax statute dealing with income from "sources within the United States," see discussion in 8 Mertens, Law of Federal Income Taxation § 45.39 (1942).

Before the 1939 amendment, the gross earnings tax then in existence did not specify that sales must take place "within the District of Columbia." See Potomac Electric Power Co. v. Hazen, 1937, 67 App.D.C. 161, 163, 90 F.2d 406, 408.