In the Matter of NATIONAL MERCHANDISING CORP., Petitioner, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, March 27, 1958.

*William E. Hegarty* and *A. Warren Wilkinson* for petitioner.

*Kent H. Brown* and *George H. Kenny* for Public Service Commission, respondent.

*Edward S. Wood* for Cazenovia Telephone Corporation, respondent.

*Sidney B. Gordon* and *Frederick C. Stimmel* for Seneca-Gorham Telephone Corporation, respondent.

Coon, J. The provision under attack by petitioner, as finally approved by the Public Service Commission, reads: " Telephone directories distributed from time to time by the Telephone Company remain the property of the Telephone Company, shall not be mutilated, and shall be surrendered upon request or upon delivery of the subsequent issue. No binder, holder, insert, auxiliary cover or attachment of any kind not furnished by the Telephone Company shall be attached to or used with the directories owned by the Telephone Company, except that this prohibition shall not apply to a subscriber-provided binder, holder, insert or auxiliary cover which contains no advertising, and which is not so attached as to impede reference to essential service information or otherwise interfere with service."

The determination of the commission followed a hearing concerning provisions affecting directory covers contained in tariffs of Cazenovia Telephone Corporation and Seneca-Gorham Telephone Corporation. All parties to this proceeding appeared at and participated in the hearing. This proceeding to review under article 78 of the Civil Practice Act was

instituted by petition and transferred to this court by an order of the Supreme Court entered in Albany County on December 13, 1957.

Petitioner is a Massachusetts corporation engaged in selling and distributing advertising. The activity with which this case is concerned is the production and distribution of covers for telephone directories. Although there are some variations, in general the covers are made of transparent plastic material with sleeves into which the front and back card covers of a telephone directory may be inserted. Hinged to the front of the plastic cover is an opaque colored plastic sheet which contains the names, businesses, addresses and telephone numbers of advertisers, and the telephone numbers of police, fire and other services. Other printed matter appears on the reverse side of the sheets. Petitioner sells the cover and the advertising to selected advertisers and the covers are distributed free to telephone subscribers served by the particular directory involved.

While the voluminous briefs present numerous collateral arguments and ramifications, the real issue, as we see it, is the power and jurisdiction of the Public Service Commission to make the determination, or to enter the field of directory advertising at all, and, if it has such power, is the regulation in question a reasonable exercise thereof. Simply put, petitioner claims that the commission is regulating the advertising business over which it has no jurisdiction. The commission contends that the practice involved here and potentially practiced by others in various forms and by various methods, is so intimately related to telephone service to the public and to telephone rates charged to subscribers that the general regulatory powers of the commission may be invoked.

Article 5 of the Public Service Law, and particularly sections 91, 92, 94 and 97 thereof, give the commission broad powers of regulation over telephone companies. The telephone directory remains at all times the property of the telephone company and is essential in facilitating the business of affording telephonic communication. It appears that the numbers of subscribers and emergency services are frequently changed and that new directories are published periodically. The commission finds that potentially incorrect numbers could be used in advertising attached to the telephone company's directory, resulting in confusion and detriment to the service rendered to subscribers generally — particularly harmful should the erroneous number be one of the emergency services. It is pointed out there can be no positive assurance that advertising containing tele-

phone numbers and designed and intended to be attached to the directories, will be changed simultaneously with the issuance of a new directory, if indeed ever.

While such a basis for assuming regulatory supervision over attachments to directories is not unreasonable, the jurisdiction of the commission need not depend upon it. The impact upon rates to subscribers is the most important factor. It is axiomatic that any loss of revenue from other sources by a telephone company must be reflected, at least in some degree, in the rates charged to subscribers. It appears from the record that telephone companies derive substantial revenue from their own advertising in telephone directories, particularly from the advertising in the so-called "yellow pages." In the case of small telephone companies the advertising revenue frequently covers the entire cost of the publication of the directory, and sometimes nets a profit in addition. There is evidence that advertisers in the "yellow pages" discontinued their advertising therein upon purchasing advertising with an outside concern to be attached to the telephone company's directory. Even without such evidence, it is a fair inference that an advertiser who has advertising attached to the very front of a directory is not likely to pay for advertising on the yellow pages in the back.

The commission has heretofore entertained jurisdiction over ordinary listings in telephone directories. (*Matter of Certain Subscribers* v. *New York Tel. Co.,* [1937] 1 P. S. C. 676, 20 P. U. R. [N. S.] 223.) This court has recognized that directory advertising is, at least to some extent, subject to the jurisdiction of the Public Service Commission. (*Matter of Solomon* v. *Public Service Comm.,* 286 App. Div. 636.) In that case we said (p. 640): "While the advertising revenues are properly treated as a part of the telephone company's utility revenues (*District of Columbia* v. *Chesapeake & Potomac Tel. Co.,* 179 F. 2d 814), the commission's primary concern in this connection is to see to it that the telephone company obtains the maximum revenue which it can reasonably obtain from its advertising operations so that the amount of revenue to be obtained from subscribers for telephone service may be reduced as much as possible." And, "The Public Service Commission's interest in advertising revenues is thus seen to be a limited one, directed principally to the effect which such revenues may have upon the remaining revenue needs of the company and, correspondingly, upon the rates to be fixed for telephone service." (P. 640.)

370

Petitioner relies heavily upon *New England Tel. & Tel. Co.* v. *National Merchandising Corp.* (141 N. E. 2d 702 [Mass.]). That case involved a civil action for an injunction between two private parties, and merely held that there was an inadequate showing to entitle plaintiff to an injunction. The rights of the public and matters of public concern by a regulating body were not involved.

We are constrained to hold that the Public Service Commission had jurisdiction to act herein, and that upon this record the determination was a reasonable one.

The determination should be confirmed, with costs to be divided among the three respondents, with printing costs to each.

FOSTER, P. J., BERGAN and GIBSON, JJ., concur.

Determination confirmed, with $50 costs to be divided among the three respondents, with printing disbursements to each.